**Jerome J. WELLS et al., Appellants,**

v.

**James E. MALLOY, Commissioner of Motor Vehicles of the State of Vermont, Appellee.**

No. 502, Docket 74–2067.

United States Court of Appeals, Second Circuit.

Argued Jan. 13, 1975.

Decided Jan. 23, 1975.

Roger E. Kohn, Hinesburg, Vt. (Vermont Legal Aid, Inc., and Michael J. Hertz, Springfield, Vt., of counsel), for appellants.

Richard M. Finn, Asst. Atty. Gen., State of Vermont, for appellee.

Before LUMBARD, FRIENDLY and GURFEIN, Circuit Judges.

FRIENDLY, Circuit Judge:

This appeal raises a novel question concerning the scope of 28 U.S.C. § 1341. This provides:

> The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under

State law where a plain, speedy and efficient remedy may be had in the courts of such State.

■ The action was brought in the District Court for Vermont. Plaintiff Wells claimed that he had failed to pay the taxes due under Vermont's Motor Vehicle Purchase and Use Tax[1] because of financial inability and that, in consequence, the Commissioner of Motor Vehicles had suspended his driver's license under 32 Vt.Stat.Ann. § 8909.[2] Plaintiff did not dispute that the tax was due and owing but claimed he was unable to pay, and that he needed his driver's license "to visit the doctor, shop for groceries, and for other necessities and amenities of daily life," that no other member of his family residing with him had a driver's license, and that the suspension was causing him "tremendous hardship, and irreparable and immediate harm." He alleged that the classification of motor vehicle operators on the basis of their liability for payment of a purchase and use tax violated the Equal Protection Clause of the Fourteenth Amendment. Plaintiff moved that a three-judge court be convened pursuant to 28 U.S.C. §§ 2281 and 2284.[3] The district judge did not reach that question since he held that maintenance of the action was barred by 28 U.S.C. § 1341 and accordingly dismissed the complaint for want of jurisdiction.[4]

A few points can be cleared away at the outset. Plaintiff does not seriously dispute the judge's conclusion that, as required by 28 U.S.C. § 1341, "a plain, speedy and efficient remedy may be had in the courts" of Vermont. See 12 Vt. Stat.Ann. § 4711 (authorizing declaratory relief); V.R.C.P. 65 (authorizing issuance of temporary restraining orders and injunctions); Graves v. Town of Waitsfield, 130 Vt. 292, 292 A.2d 247 (1972). There is no exemption from the anti-injunction act relating to state taxes, 28 U.S.C. § 1341, such as there is in the general statute against enjoining state court proceedings, 28 U.S.C. § 2283, for instances where an injunction is "expressly authorized by an Act of Congress", e. g., the Civil Rights Act, 42 U.S.C. § 1983, and its jurisdictional implementation, 28 U.S.C. § 1343(3), see Mitchum v. Foster, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972). We have thus held, both before *Mitchum*, American Commuters Ass'n, Inc. v. Levitt, 405 F.2d 1148 (2 Cir. 1969), and thereafter, Hickmann v. Wujick, 488 F.2d 875, 876 (2 Cir. 1973), that invocation of the Civil Rights Act does not suffice to create an exemption from 28 U.S.C. § 1341. Indeed, many of the actions at which the state tax injunction was deliberately aimed raised constitutional claims of the sort now held to be embraced by the Civil Rights Act, Lynch v. Household Finance Corp., 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972). *See also id.* at 542, n. 6, 92 S.Ct. 1113. Finally, plaintiff derives no benefit from Harper v. Virginia Bd. of Elections, 383 U.S. 663, 86

1. 32 Vt.Stat.Ann. § 8903. This provision imposes upon Vermont residents a tax on the purchase and use of motor vehicles.

2. If the tax due under . .. . section 8903 of this title is not paid as hereinbefore provided the commissioner shall suspend such purchaser's right to operate a motor vehicle within the state of Vermont until such tax is paid . . ..

3. Although the complaint had originally sought to maintain the action on behalf of "all persons in the State of Vermont who have had their license [sic] suspended for failure to pay a Vermont Motor Vehicle Purchase and Use Tax," it was later stipulated that plaintiff would withdraw his class action allegations, that the Commissioner would extend to all persons similarly situated the same relief as the court might decree in favor of plaintiff, and that the Commissioner would not object to an order directing him to restore the driving licenses of plaintiff and all intervenors whose driver's licenses had been suspended for the same reason (whose intervention the Commissioner would not oppose) until further order of the court. Similar statesmanship by plaintiffs' lawyers and government counsel would avoid much useless bickering over class action designation in cases where a plaintiff seeks declaratory or injunctive relief against state or federal officials.

4. We note in passing that this issue was appropriate for resolution by the single judge and, accordingly, that appeal lies to this court and not directly to the Supreme Court. Gonzalez v. Automatic Employees Credit Union, 419 U.S. 90, 95 S.Ct. 289, 42 L.Ed.2d 249 (1974).

S.Ct. 1079, 16 L.Ed.2d 169 (1966), invalidating Virginia's poll tax, since the defendants in that case had not raised the issue of the applicability of the state tax injunction act, and neither the majority nor the minority opinions advert to it.

▮▮ Despite these considerations which might be thought to point to affirmance, we take a different view. Clearly plaintiff Wells is not seeking to restrain the "assessment" or "levy" of a tax under state law. The state's claim, sustained by the court below, is that he is seeking to restrain its "collection". We are not impressed by Wells' argument that he is not seeking to restrain collection because he cannot pay the tax, whatever Vermont may do; doubtless the state believed that the sanction of revocation of a driver's license, like the older method of imprisonment for debt, might cause some money to be produced from somewhere, despite a taxpayer's protest that he has none. "Collection", of course, could be read broadly to include anything that a state has determined to be a likely method of securing payment, and the district court reasoned that " 'collection' and 'enforcement' are so intertwined inextricably with one another that we would be required to draw an impossible distinction between the means and the end of the tax collection process in order to accept plaintiff's contention in this regard." We do not believe, however, that Congress intended to go so far. The context and the legislative history, see H.R.Rep.No.1503, 75th Cong., 1st Sess. 2 (1937); Sen.Rep.No. 1035, 75th Cong., 1st Sess. 1–2 (1937); 81

Cong.Rec. 1415, 1416 (Feb. 19, 1937) (remarks of Sen. Bone), lead us to conclude that, in speaking of "collection", Congress was referring to methods similar to assessment and levy, e. g., distress or execution, compare Murray's Lessee v. Hoboken Land and Improvement Co., 18 How. (59 U.S.) 272, 278, 15 L.Ed. 372 (1856); Damsky v. Zavatt, 289 F.2d 46, 50–51 (2 Cir. 1961), that would produce money or other property directly, rather than indirectly through a more general use of coercive power. Congress was thinking of cases where taxpayers were repeatedly using the federal courts to raise questions of state or federal law going to the validity of the particular taxes imposed upon them [5]—not to a case where a taxpayer contended that an unusual sanction for non-payment of a tax admittedly due violated his constitutional rights, an issue which, once determined, would be determined for him and all others.

▮▮ In the interests of judicial economy we add that, under the test laid down in Goosby v. Osser, 409 U.S. 512, 518, 93 S.Ct. 854, 35 L.Ed.2d 36 (1973), the district judge should request the convening of a three-judge court, as he apparently would have done but for his views with respect to the prohibition of 28 U.S.C. § 1341. Although United States v. Kras, 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973), provides substantial support to the state's position, it does not "inescapably render the claims frivolous," the test laid down in Goosby v. Osser, *supra*.

5. See Sen.Rep., *supra*, at 2:

The existing practice of the Federal courts in entertaining tax-injunction suits against State officers makes it possible for foreign corporations doing business in such States *to withhold from them and their* governmental subdivisions, taxes in such vast amounts and for such long periods of time as to seriously disrupt State and county finances. The pressing needs of these States for this tax money is so great that in many instances they have been compelled to compromise these suits, as a result of which substantial portions of the tax have been lost to the States without a judicial examination into the real merits of the controversy.

Especially pertinent is a letter by an assistant attorney general of the State of Washington and introduced into the Congressional Record by a sponsor of what is now § 1341, in which there is detailed the history of litigation between railroads operating in that state and counties with respect to property taxes. The *assistant attorney general noted that the rail*roads sued in federal courts on an annual basis to restrain collection of the taxes and tied up the collection process for years. 81 Cong.Rec. 1416 (Feb. 19, 1937).

Reversed and remanded with instructions to request the convening of a three-judge court. We understand the restraining order and the stipulation of counsel, see fn. 3, will continue in effect pending decision by the three-judge court.