HUBER PONTIAC, INC., a Delaware Corporation, Plaintiff-Appellee, Cross-Appellant,

v.

Robert M. WHITLER, Individually and as Director of Revenue of the State of Illinois, Defendant-Appellant, Cross-Appellee.

Nos. 77–1975, 77–1976.

United States Court of Appeals, Seventh Circuit.

Heard April 13, 1978.

Decided Sept. 19, 1978.*

Opinion released Oct. 27, 1978.

Robert G. Epsteen, Asst. Atty. Gen., Chicago, Ill., for defendant-appellant.

William S. Hanley, Springfield, Ill., for plaintiff-appellee.

Before CUMMINGS and BAUER, Circuit Judges, and SOLOMON, Senior District Judge.**

CUMMINGS, Circuit Judge.

This appeal and cross appeal arise from an action brought pursuant to 42 U.S.C. § 1983 by Huber Pontiac, Inc. (Huber) against the Director of the Illinois Department of Revenue (Department). In its complaint Huber alleges that certain aspects of the hearing procedure for assessing an Illinois use tax deficiency violate its due process rights as guaranteed by the Fifth and Fourteenth Amendments. Specifically, Huber faults the Department's Hearing

---

* This appeal was originally decided by unreported order on September 19, 1978. See Circuit Rule 35. The Court has subsequently decided to issue the decision as an opinion.

** The Honorable Gus J. Solomon, Senior District Judge of the District of Oregon, is sitting by designation.

Rule 2–4 (which provides that the hearing officer shall both preside at the hearing and present the Department's case) and the Director's failure personally to set forth the basis for the deficiency decision.

In the district court the Department filed a motion to dismiss on the ground that the Tax Injunction Act, 28 U.S.C. § 1341, was a total bar to the action. This motion was denied by the district court. In its later final decision the district court declared Hearing Rule 2–4 unconstitutional and granted a mandatory injunction compelling the Director to grant Huber a new hearing. The Department has appealed that portion of the final decision granting the above-mentioned relief; Huber has appealed the denial of its request for attorney's fees and that portion of the order in which the district court declined to rule on the Director's failure to set forth his own reasons for finalizing the deficiency assessment.

■ The threshold inquiry for this Court must be whether it has jurisdiction to adjudicate this matter. One of the statutory authorities directly related to this issue is 28 U.S.C. § 1341 which provides:

> "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."

This statute codifies the well-established policy of non-intervention by federal courts in state taxation matters. *Tully v. Griffin,* 429 U.S. 68, 73, 97 S.Ct. 219, 50 L.Ed.2d 227; *Great Lakes Dredge & Dock Co. v. Huffman,* 319 U.S. 293, 298–299, 63 S.Ct. 1070, 87 L.Ed. 1407; *28 East Jackson Enterprises, Inc. v. Cullerton,* 523 F.2d 439, 441 (7th Cir. 1975). The other relevant jurisdictional statute is 28 U.S.C. § 1343(3):

> "The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:
>
> .  .  .  .  .
>
> (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States."

Recognizing the clear jurisdictional bar presented by the language of Section 1341, Huber characterizes this action as one to enforce its procedural due process rights and not as a state tax case. As such, it asserts that jurisdiction under Section 1343(3) is proper and further that Section 1341 cannot be used to limit a federal court's jurisdiction under the former provision.

When this same argument was presented below, the district court found support for it in dicta in a Seventh Circuit case, *Gray v. Morgan,* 371 F.2d 172 (7th Cir. 1966), certiorari denied, 386 U.S. 1033, 87 S.Ct. 1484, 18 L.Ed.2d 596, and denied the Department's motion to dismiss. In doing so, the district court quoted the following language from *Gray* (at 175):

> "In the instant case, we have no claim of the denial of procedural due process. Plaintiffs do not complain of the method of assessing or collecting the tax. They complain of the tax itself."

Apparently the district court accepted this language as an indication that the Tax Injunction Act was not a complete bar to a Section 1983 action if personal rights and not property rights were at issue. The Department argues, however, that this ruling by the district court misconceives the scope and legislative intent of Section 1341 as expressed in both its plain language and in a number of judicial pronouncements since this Court's comments in *Gray.*

Huber's argument based on the alleged dichotomy between personal and property rights in a civil rights action was addressed and laid to rest in *Lynch v. Household Finance Corp.,* 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424, decided six years after *Gray.* In *Lynch* the Supreme Court rejected the distinction between personal liberties and proprietary rights for the purpose of invoking Section 1343 jurisdiction. The Court specifically noted that its opinion in no way

diminished the force and effect of the jurisdictional bar imposed by Section 1341. In fact, its vitality was reaffirmed:

"All of these cases [supporting the limitation of § 1343(3) jurisdiction to claims of deprivation of personal liberties] involved constitutional challenges to the collection of state taxes. Congress has treated judicial interference with the enforcement of state tax laws as a subject governed by unique considerations and has restricted federal jurisdiction accordingly . . .. We have repeatedly barred anticipatory federal adjudication of the validity of state tax laws. . . The decisions cited by appellees may, therefore, be seen as consistent with congressional restriction of federal jurisdiction in this special class of cases, and with long-standing judicial policy." *Id.* at 542–543 n.6, 92 S.Ct. at 1117 (citations omitted).

In the first post-*Lynch* case which faced the quandary between the two conflicting statutes, the Fifth Circuit held the tax injunction statute dispositive. In *Bland v. McHann,* 463 F.2d 21 (5th Cir. 1972), certiorari denied, 410 U.S. 966, 93 S.Ct. 1438, 35 L.Ed.2d 700, the court was presented with the situation where blacks alleged that their property tax assessments had been discriminatorily increased in retaliation for their civil rights activities. There the court quoted footnote 6 in *Lynch* and found it decisive. *Id.* at 24–25. Similarly in *Coon v. Teasdale,* 567 F.2d 820 (8th Cir. 1977), *Kimmey v. H.A. Berkheimer, Inc.,* 376 F.Supp. 49 (E.D.Pa.1974), affirmed 511 F.2d 1394 (3d Cir. 1975), and *Green v. Klinkofe,* 422 F.Supp. 1021 (N.D.Ind.1976) where complainants attacked the unconstitutional manner in which tax statutes were implemented, the courts unanimously held Section 1341 controlling. Moreover, these latter decisions, all involving procedural due process violations as compared to the substantive due process violation in *Bland,* clearly refute Huber's suggestion that courts have not as yet addressed the issue of Section 1341 jurisdiction solely in the context of procedural due process matters.

Without conceding the applicability of Section 1341 to this case, Huber points to a Second Circuit case, *Wells v. Malloy,* 510 F.2d 74 (2d Cir. 1975), for the proposition that notwithstanding the mandatory language of Section 1341, courts can create exceptions to this jurisdictional bar. *Wells* involved a challenge to a Vermont statute which caused a person's driver's license to be suspended for failure to pay a purchase or use tax on automobiles, regardless of whether or not one is able to pay the tax. There the district court was reversed for having found the "enforcement" portion of the statute so "intertwined inextricably" with the "collection" of a state tax as to fall within the scope of Section 1341. *Id.* at 77. The Second Circuit likened this sanction to imprisonment for debt and found that the term "collection" was not intended by Congress to include this indirect method of employing coercive power. Rather collection meant "methods similar to assessment and levy, e. g. distress or execution, . . that would produce money or other property directly." *Id.*

Our review of *Wells* satisfies us that it is inapposite to this case. Here the Department is not enforcing an unusual sanction for a tax admittedly due. Huber's complaint is with the method of assessment, not the actual collecting of the deficiency. Moreover, *Wells* did not in any way alter the Second Circuit's position that "invocation of the Civil Rights Act does not suffice to create an exemption from 28 U.S.C. § 1341," *Id.* at 76; *Hickman v. Wujick,* 488 F.2d 875, 876 (2d Cir. 1973); *American Commuters Ass'n v. Levitt,* 405 F.2d 1148 (2d Cir. 1969). *Wells* was not an exception; Section 1341 just was not applicable.

Huber also directs attention to a Fifth Circuit case, *Hargrave v. McKinney,* 413 F.2d 320 (5th Cir. 1969), as presenting another exception to the Tax Injunction Act. However, once again, Huber is mistaken. The *Hargrave* court was not faced with "a suit to enjoin, restrain or suspend the collection of a tax, *but to the contrary . . . a suit to require the collection of taxes* which citizens of a county have

voted to impose on freeholders in the county." *Id.* at 326 (emphasis added). There the issue was whether or not the federal policy of non-intervention in state tax matters, which was the underlying basis for Section 1341, would operate in a situation where the facts of the case did not comport exactly with the language of 1341. In an exceedingly narrow opinion, a divided Fifth Circuit held the 1341 bar inapplicable. *Id.* at 320. Later, after a remand, a decision on the merits (*Hargrave v. Kirk,* 313 F.Supp. 944 (M.D.Fla.1970)), and a direct appeal to the Supreme Court, the case was again remanded to the district court to consider whether in the interest of equity, comity and federalism the court should have abstained. *Askew v. Hargrave,* 401 U.S. 476, 478, 91 S.Ct. 856, 28 L.Ed.2d 196.[1] *Hargrave* makes it clear that even if the facts of a state tax matter do not technically fit within the language of Section 1341, the federal courts should in their discretion restrain from interfering in the state proceedings.

It must be noted that the Second, Third, Fifth and Eighth Circuits rendered their decisions after a careful perusal of the Congressional history and intent of 28 U.S.C. § 1341. This Court, having similarly reviewed the legislative history of this Act,[2] likewise finds no support for Huber's contention that administrative procedures of state taxing agents were meant to be excluded from the Section 1341 bar.

■ Having failed to convince us that procedural due process violations are exempted under Section 1341, Huber next argues that because the relief sought and granted did not in effect "enjoin, suspend or restrain the assessment, levy or collection of any tax under State law" within the scope of Section 1341, the district court's decision ·must be affirmed. The weakness of this argument is obvious. Here the district court ordered the Department to give Huber a new hearing "in which Hearing

Rule 2–4 is not to be applied" (*Mem. Order,* July 31, 1977). As this action will "suspend" the State's ability to collect the deficiency tax from Huber until a later day, it clearly violates the Tax Injunction statute. Moreover, the court's finding that the Rule is unconstitutional will "restrain" the State from finding other tax deficiencies through the present hearing process until appropriate new rule provisions can be made and new staff can be hired to perform the duties once accomplished by a single hearing officer.

■ Finally, Huber asserts that because there is no "plain, speedy and efficient remedy" to review the Department's decision within the state system, the 1341 bar is not applicable. Huber argues that the Illinois Administrative Review Act (Ill.Rev.Stat. ch. 110, §§ 264 *et seq.* (1975)), which on its face purports to afford this remedy, is not in reality an effective method because it does not allow a hearing on new evidence but permits only a review of the agency record. *Id.* §§ 272(a), (b). As Huber intends to raise an issue *de hors* the record, *i. e.,* that the hearing officer was prejudiced by *ex parte* contacts he made with Department personnel, Huber claims the method of review offered by the state is ineffectual.

The Department, on the other hand, points out that Huber orally noted its objections to the Department procedure at the beginning of the hearing and· during the hearing. In addition, Huber filed a brief contesting the constitutional validity of Rule 2–4 on due process grounds. In fact, the hearing officer in his Summary of Hearing Recommendation specifically addressed both the constitutional validity of Rule 2–4 and the allegation of bias resulting from the *ex parte* contacts (Appendix to Reply Brief at A62). As such, the Department argues, Huber could have raised both issues because they were already a part of

---

1. Subsequent proceedings are apparently unreported.

2. *See, e. g.,* S.Rep.No.1035, 75th Cong., 1st Sess., pp. 2–3 (1937); H.R.Rep.No.1503, 75th Cong., 1st Sess., pp. 2–3 (1937); 81 Cong.Rec. 1416–1417 (1937).

the record.[3]  In support of this view it cites the following:

"Every action to review any final administrative decision shall be heard and determined by the court with all convenient speed. *The hearing and determination shall extend to all questions of law and of fact presented by the entire record before the court.*" *Id.* § 274 (emphasis added).

■ Under the facts of this case, we agree with the Department that Illinois courts did afford Huber a viable method of contesting the hearing procedures. For example, Huber's argument that the facts regarding the issue of bias would be insufficient for it to obtain a summary judgment ignores the possibility that they might have been sufficient to warrant the granting of a new hearing. Also, Illinois courts are not adverse to hearing constitutional challenges similar to Huber's complaints with Rule 2–4. *See, e. g., Murphy v. Cuesta, Rey & Co.,* 381 Ill. 162, 45 N.E.2d 26 (1942). Indeed, in *Sundstrand Corp. v. Dep't of Revenue,* 34 Ill.App.3d 694, 704, 339 N.E.2d 351 (2d Dist. 1975) the Appellate Court of Illinois considered this same due process challenge.[4]  Furthermore, even if Huber were faced with a dispositive and recent decision from the Illinois Supreme Court which would render its state court challenges futile, Huber could still attempt to obtain review from the Supreme Court of the United States after losing in the state system. Mere futility of state court proceedings does not allow a federal court to ignore the explicit prohibitions of Section 1341. *Coon v. Teasdale,* 567 F.2d 820 (8th Cir. 1977).

Because the district court was without jurisdiction to decide this case on the merits, its judgment is vacated.

---

**3.** No such review is possible at this time under the Administrative Review Act because this action is time barred. Ill.Rev.Stat. ch. 110, § 267 requires the filing of a complaint and the issuance of a summons within 35 days from the date of the agency decision.

**4.** Although Sundstrand Corp. was unsuccessful in the Second District of the Appellate Court of

Illinois, Huber might have obtained a different result in the Fourth District where it would have filed. Decisions of the various Districts of the Appellate Court of Illinois are not binding on other Districts. *Garcia v. Hynes & Howes Real Estate, Inc.,* 29 Ill.App.3d 479, 482, 331 N.E.2d 634 (3rd Dist. 1975).