**SCHNEIDER TRANSPORT, INC., a Wisconsin Corporation, Plaintiff-Appellant,**

v.

**Dale CATTANACH, individually and as Secretary of the Wisconsin Department of Transportation, and his agents, employees, successors in office, assistants and all others acting in concert or cooperation with him or at his direction or under his control, Defendants-Appellees.**

No. 80–2246.

United States Court of Appeals, Seventh Circuit.

Argued April 16, 1981.

Decided Aug. 17, 1981.

Rehearing and Rehearing En Banc Denied Oct. 14, 1981.

Edward A. Dudek, Milwaukee, Wis., for plaintiff-appellant.

John W. Calhoun, Wis. Dept. of Justice, Madison, Wis., for defendants-appellees.

Before BAUER, Circuit Judge, PECK,* Senior Circuit Judge, and CUDAHY, Circuit Judge.

* The Honorable John W. Peck, Senior Judge of the United States Court of Appeals for the Sixth Circuit, is sitting by designation.

BAUER, Circuit Judge.

Plaintiff-appellant's complaint sought to enjoin the imposition of almost $800,000 in vehicle registration fees sought by the State of Wisconsin. The complaint also sought declaratory relief. The district court dismissed the complaint for lack of subject matter jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201. We affirm, but for a different reason. We hold that appellant's complaint is barred by the Tax Injunction Act, 28 U.S.C. § 1341.

## I

Trucking companies in interstate commerce are often regulated by the several states in which they operate. Registering of trucks is a common method of raising revenue and regulating the industry. The result, however, is that every truck carries many registration plates, creating administrative · and regulatory problems for the states and the trucking firms. To deal with these problems, the American Association of Motor Vehicle Administrators drafted the International Registration Plan ("IRP"). The purpose of the plan is to "implement the concept of one registration plate for one vehicle" and to apportion fees among states. International Registration Plan (hereinafter "IRP"), Art. I, ¶ C. Under the IRP, a trucking company need register its interstate trucks in only one "base jurisdiction." Fees due the other states in which it operates are computed according to a formula based on the miles traveled in

each state and on the state's rate formula. IRP, Art. III.

The IRP defines "base jurisdiction" as the jurisdiction where the registrant has an established place of business, where mileage is accrued by the fleet and where operational records of such fleet are maintained or can be made available in accordance with the provisions of Article XIV, A(2).

IRP, Art. II, ¶ C(1).

Plaintiff-appellant Schneider Transport, Inc. ("Schneider") is a Wisconsin corporation with its principal place of business in Green Bay, Wisconsin. Prior to 1978, Schneider registered its fleet of 1300 trucks and trailers in Wisconsin. Wisconsin ratified the IRP in 1978. Thereafter, Schneider registered its fleet in Illinois, using a facility in Streator, Illinois as its place of business. Schneider alleged in its complaint that its Streator terminal is "an established place of business of Schneider within the meaning of Article II, Section C(1), of the IRP." Plaintiff's Complaint, ¶ 10.[1] Illinois issued the registration plates and forwarded to the Wisconsin Department of Transportation about $245,000 in proportional registration fees based on the miles traveled by Schneider's fleet in Wisconsin. Had Wisconsin been Schneider's base jurisdiction, Schneider would have owed an additional $797,711.85 in fees.[2]

The Wisconsin Department of Transportation conducted an investigation of Schneider. Its officials discovered that the Streator facility was no more than a "driv-

---

1. Schneider alleged:

Schneider maintains, and has maintained since 1969, a terminal at 999 E. Morrell Street, Streator, Illinois. Said terminal is located on a plot of land approximately 100 feet wide and 200 feet deep, which has been leased by Schneider on a long-term basis. A mobile home approximately 10 feet wide and 30 feet long, which is owned by Schneider, has been located on that property since 1969. The mobile home is on blocks rather than wheels, and is connected to the local water, sewerage, and electrical utilities. A pay telephone listed in the name of Schneider is located in the mobile home. Schneider employs an employee on a part-time basis to clean and maintain the mobile home. At present, 76 drivers employed by Schneider

reside within 125 miles of Streator, and are based out of the Streator terminal. These drivers pick up their bills at the Streator terminal, complete their paperwork at the conclusion of deliveries there, and often spend the night in the mobile home at the conclusion of late night or early morning deliveries. There are 10 to 25 trailers in the terminal yard at most times.

Plaintiff's complaint ¶ 10.

2. Article II, Paragraph G of the IRP provides that the only base jurisdiction "may include [in calculating the fees due] those miles traveled in non-member jurisdictions which impose no fees for ... vehicle registration." Official Commentary, IRP, Art. II, ¶ G. Illinois law does not charge for these miles; Wisconsin law does.

er's room." [3] Schneider's only offices for dispatching, repairs, personnel, storage, and administration remained in and around Green Bay. Affidavit of James A. Crawmer (Nov. 19, 1979).

On June 7, 1978, the Wisconsin Secretary of Transportation, defendant-appellee Dale Cattanach, notified Schneider that it was improperly using Illinois as its base jurisdiction. His letter informed Schneider that it must transfer its base jurisdiction to Wisconsin and pay the almost $800,000 in fees within 72 hours. Schneider alleged that the Department threatened enforcement action, "subjecting Schneider and its drivers to the imposition of fines" and other penalties. Plaintiff's Complaint ¶ 18. The Department admitted that it agreed not to begin enforcement actions until June 15, 1978. Defendants' Answer ¶ 11.

On June 15, 1978, Schneider filed this action for declaratory and injunctive relief. Schneider alleged federal claims under the interstate commerce, due process, and full faith and credit clauses. It attached a pendent state claim for breach of the IRP.

The district court issued a temporary restraining order on June 16 and a preliminary injunction on July 11. The orders restrained the Secretary of Transportation from collecting any registration fees. On August 21, 1980, however, the court dismissed Schneider's complaint and dissolved its injunction. The court held that it lacked subject matter jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201, because Schneider alleged only federal defenses and no federal claims. The court only commented briefly on the Tax Injunc-

tion Act, 28 U.S.C. § 1341. It held that the Act did not bar Schneider's complaint because the Wisconsin "remedies are not necessarily efficient." On October 17, 1980, the district court granted Schneider's motion for a stay pending appeal.

## II

■ The Tax Injunction Act of 1937, 28 U.S.C. § 1341, provides:

The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

It is well settled that allegations of deprivations of constitutional rights do not render the Act inapplicable. *Huber Pontiac, Inc. v. Whitler*, 585 F.2d 817, 819–20 (7th Cir. 1978); *Gray v. Morgan*, 371 F.2d 172, 175 (7th Cir. 1966), *cert. denied*, 386 U.S. 1033, 87 S.Ct. 1484, 18 L.Ed.2d 596 (1967). If the Act applies, therefore, this suit must be dismissed. Schneider contests the applicability of the Act on five grounds: (1) that registration fees are not taxes; (2) that the fees imposed under the IRP are not taxes "under state law;" (3) that the remedy under Wisconsin law for refunds of taxes is not "efficient;" (4) that its suit seeks to enjoin a sanction for non-payment; and (5) that its suit is covered by a court-made exception to the Act because it has shown extraordinary irreparable injury and because "under no circumstances" could Wisconsin prevail in this action. We consider each of these contentions.

---

**3.** The facility is a mobile home containing a pay telephone, a soft drink machine, a couch, a table, and chairs. No one employed by Schneider regularly works there except a woman who cleans it weekly and forwards any mail to Green Bay. Affidavit of James A. Crawmer (June 27, 1978).

The official commentary to the IRP states:
It is not now, and never has been, the intent of the Plan to permit a registrant to use the flexible provisions of this section in changing his base jurisdiction as a device to avoid the payment of registration fees on a 100% mileage basis [see n.2 *supra*].

\* \* \* \* \* \*

Although "an established place of business" is not defined, it is construed to mean:
"... a physical structure owned, leased or rented by the fleet registrant the location of which is designated by street number or road location, and which is open during normal business hours, and in which are located:
1) a telephone or telephones publicly listed in the name of the fleet registrant,
2) a person or persons conducting the fleet registrant's business, and
3) the operational records of the fleet (unless such records can be made available in accordance with the provisions of Article XIV.A.2)."

### A

██ The Act applies to any "tax." Although not denominated as such, the registration fees are imposed for revenue-raising purposes, a characteristic of any tax. *Commercial Credit Corp. v. Schneider*, 265 Wis. 264, 61 N.W.2d 499, 501 (1953). The fees are deposited in a segregated fund, the state transportation fund, Wis.Stat. § 25.40, for transportation purposes, including highway construction. Wis.Stat. § 20.395. The revenues from the fund "are deposited into funds other than the general fund and are available for the purposes for which such funds are created." Wis.Stat. § 20.-001(2)(d). Schneider's argument that the fees are "regulatory licensing fees" is belied by these provisions. *See State of Wisconsin v. Yellow Freight System, Inc.*, 96 Wis.2d 484, 487–92, 292 N.W.2d 361 (1980), *aff'd*. 101 Wis.2d 142, 303 N.W.2d 834 (1981) (comparing permit fees, whose purpose is to identify authorized vehicles for regulatory purposes, with registration fees, whose purpose is to raise revenue and to identify vehicles to aid law enforcement). *See also Britton Motor Service v. Dammann*, 14 F.Supp. 634, 635 (W.D.Wis.1936) ("the registration fee . . . is a tax devoted exclusively to highway needs").

### B

██ Schneider claims that the fees are not assessed "under State law" because vehicles registered pursuant to the IRP are exempt from registration in Wisconsin. Wis.Stat. § 341.05(5). However, the International Registration Plan has no independent force of law, but must be adopted by the legislature of each signatory state. Wisconsin has authorized its Secretary of Transportation to "ratify and do all things necessary to effectuate" the IRP. Wis. Stat. § 341.405.[4] Once so adopted, the IRP is enforceable as a Wisconsin statute. *See State of Wisconsin v. Yellow Freight System, Inc.* Indeed, it is obvious that the exemption from registration in section 341.-05(3) was necessary to avoid a conflict with the IRP, which provides that

> Vehicles registered as provided in Section A of this Article shall be deemed fully registered in all jurisdictions where proportionally registered for any type of movement or operation. . . .

IRP, Art. V, ¶ B. Registration under the IRP is in lieu of registration under Wisconsin law. *State of Wisconsin v. Yellow Freight Systems, Inc.*, 303 N.W.2d at 839. It is not, as Schneider suggests, an abdication of Wisconsin's authority to tax vehicles subject to the IRP. Supplemental Brief of Appellant at 5 n.2. Indeed, the amount of the registration fees due can be determined only with reference to the Wisconsin registration rate schedules. IRP, Art. III, ¶ A.[5] We therefore hold that the tax sought by Wisconsin is imposed "under State law."

### C

Schneider also argues that the remedy provided by Wisconsin law is inefficient. Wis.Stat. § 345.08 provides:

> No suit shall be maintained in any court to restrain or delay the collection or payment of the taxes levied or the fees imposed or enacted in chs. 341 to 349. The aggrieved tax payer shall pay the tax or fee as and when due and, if paid under protest, may at any time within 90 days from the date of such payment sue the state in an action at law to recover the

---

4. Wis.Stat. § 341.405(1) provides:
   (1) The secretary of transportation, with approval of the governor, shall ratify and do all things necessary to effectuate the international registration plan adopted by the American association of motor vehicle administrators, with such exceptions as are deemed advisable and such changes as are necessary.

5. Article III, ¶ A provides:
   A. The registration fee for apportionable vehicles shall be determined as follows:

1. Divide the in-jurisdiction miles by total miles generated during the preceding year.
2. Determine the total fees required under the laws of each jurisdiction for full registration of each vehicle at the regular annual or applicable fees, or for the unexpired portion of the registration year.
3. Multiply the sum obtained under Paragraph 2 of this section by the quotient obtained under Paragraph 1 of this section.

tax or fee so paid. If it is finally determined that such tax or fee or any part thereof was wrongfully collected for any reason, the department of administration shall issue a warrant on the state treasurer for the amount of such tax or fee so adjudged to have been wrongfully collected and the state treasurer shall pay the same out of the transportation fund. A separate suit need not be filed for each separate payment made by any taxpayer, but a recovery may be had in one suit for as many payments as were made within the 90-day period preceding the commencement of the action. Such suits shall be commenced as provided in s. 775.-01.

Other sections of Wisconsin law provide for appeal. Wis.Stat. §§ 808.03, 809.60, 809.62.

Schneider has not argued that the statutory provision of a tax refund suit is not plain or speedy. Such requirements are not unusual, and have been upheld as plain, speedy, and efficient. *See Rosewell v. La-Salle National Bank*, 450 U.S. 503, 101 S.Ct. 1221, 67 L.Ed.2d 464 (1981). Rather, Schneider argues that the Wisconsin remedy is not efficient because it will be forced to bring a multiplicity of suits and that it will be subjected to unusual hardship. These claims are without merit.

The Supreme Court has held that a tax scheme that required a railroad to raise its constitutional objections in three hundred separate county actions was not efficient. *Georgia Railroad & Banking Co. v. Redwine*, 342 U.S. 299, 303, 72 S.Ct. 321, 323, 96 L.Ed. 335 (1952); *cf. Rosewell v. LaSalle National Bank*, 450 U.S. at 514–16, 101 S.Ct. at 1230. Similarly, in *United States Steel Corp. v. MultiState Tax Commission*, 367 F.Supp. 107 (S.D.N.Y.1973), the court held the Tax Injunction Act inapplicable in a suit by United States Steel to resist an audit ordered by the MultiState Tax Commission. Under the MultiState Tax Compact, the Commission could seek enforcement of its audit order in any of the seventeen signatory states. It was likely that the plaintiff would have to resist in every state because it was questionable "whether those sister states would be bound" by the decision of one state court declaring other States' laws unconstitutional. Finally, plaintiff would have to file a suit in every state to enforce a judgment in its favor. *Id.* at 117.

■ None of these factors are present here. Only one taxing authority—Wisconsin—seeks to impose taxes. Wisconsin's suit does not depend on the action of any multistate organization or involve more than one taxing authority. *Accord, Georgia Railroad & Banking Co. v. Redwine*, 342 U.S. at 303, 72 S.Ct. at 323. Schneider does not support its speculation that other states will try to collect additional taxes. The threat of multiple lawsuits here is only speculative and thus insufficient to avoid the Tax Injunction Act.

Schneider also claims undue hardship will result because it will be required to register its vehicles in Wisconsin as a condition of complying with Wisconsin's demand for payment. Such registration would cost Schneider twenty to thirty thousand dollars in administrative expenses in addition to the $800,000 in fees.[6]

■ The Tax Injunction Act, however, is concerned only with the procedural sufficiency of a state remedy. *Rosewell v. La-Salle National Bank,* 450 U.S. at 515, 101 S.Ct. at 1230. Indeed, Schneider's argument that "undue hardship" renders a remedy inefficient is drawn from a statement in the *Rosewell* decision which concerned procedural matters. Multiple lawsuits, the Court held, impose an "unusual hardship ... requiring ineffectual activity or an unnecessary expenditure of time or energy." *Id.* As its reference was to the procedural elements of the remedy, it does not apply to Schneider's complaint that compliance will cost it money. As in *Rosewell*, Schneider's complaint addresses "a more substantive concern.... The procedural method for correction of [its] tax bill remains the same," whether Schneider must incur additional expenses or not. *Id.* An economic

---

**6.** For purposes of a motion to dismiss, we must accept Schneider's allegations as true.

burden does not affect Schneider's ability to obtain a "full hearing and judicial determination" of its claims. *Id.* 450 U.S. at 514, 101 S.Ct. at 1230.

*Rosewell* also conclusively deals with Schneider's intimation that it is unduly burdensome to require it to pay $800,000 to Wisconsin and lose the interest on the money while in litigation. *Rosewell* directly held that the failure to pay interest on tax refunds does not render a remedy "inefficient." *Id.* 450 U.S. at 516, 101 S.Ct. at 1230. The loss of interest on the funds paid in taxes is just another form of the same complaint. We therefore reject Schneider's contention that its state court remedy is inefficient.

### D

■ Schneider next argues that the Tax Injunction Act is inapplicable because Schneider seeks to enjoin a sanction for non-payment of taxes. Schneider alleged that defendant threatened to begin mass ticketing of its trucks for non-registration, as provided in Wis.Stat. § 341.04. Unlike in *Wells v. Malloy*, 510 F.2d 74, 77 (2d Cir. 1975), however, Schneider does not allege that ticketing of unregistered vehicles is "an unusual sanction for non-payment of a tax admittedly due." *See also Mobil Oil Corp. v. Tully*, 639 F.2d 912, 918 (2d Cir. 1981). Schneider is in a contrary situation. It denies the tax is due and does not allege that ticketing unregistered vehicles is unusual. Nor could such a position be seriously argued, as it is probably the most familiar sanction we know. As such, we need not discuss the other distinctions of *Wells* suggested by appellee. *Wells* simply does not apply.[7] *See Huber Pontiac, Inc. v. Whitler*, 585 F.2d at 819.

### E

■ Finally, Schneider urges that we apply a court-made exception to the Tax Injunction Act. In *Enochs v. Williams Packing & Navigation Co., Inc.*, 370 U.S. 1, 7, 82

S.Ct. 1125, 1129, 8 L.Ed.2d 292 (1962), the Supreme Court carved out an exception to the Anti-Injunction Act of 1867, 26 U.S.C. § 7421, which Schneider claims is analogous to the Tax Injunction Act. The Court held:

> The manifest purpose of § 7421(a) is to permit the United States to assess and collect taxes alleged to be due without judicial intervention, and to require that the legal right to the disputed sums be determined in a suit for refund. In this manner the United States is assured of prompt collection of its lawful revenue. Nevertheless, if it is clear that under no circumstances could the government ultimately prevail, the central purpose of the Act is inapplicable and . . . the attempted collection may be enjoined if equity jurisdiction otherwise exists. In such a situation the exaction is merely in "the guise of a tax."

*Id.* at 7, 82 S.Ct. at 1129 (citation omitted).

Schneider's position must rest on a claim that Wisconsin could prevail "in no circumstances." We cannot accept that claim. As the facts and the opinion of the district court indicate, there is substantial dispute over the merits of Schneider's claims. As such, we need not decide whether the *Williams Packing* exception should apply to the Tax Injunction Act. Even if it did, the circumstances would not justify its application here.

For the above reasons, we hold that the Tax Injunction Act bars plaintiff's suit. The stay entered by the district court is hereby dissolved and the decision of the district court is

Affirmed.

---

7. Since Schneider does not seek damages, our decision in *Fulton Market Cold Storage Co. v. Cullerton*, 582 F.2d 1071 (7th Cir. 1978), *cert.* denied, 439 U.S. 1121, 99 S.Ct. 1033, 59 L.Ed.2d 82 (1979), also does not apply.