**AVON GROUP, INC., Plaintiff(s),**

v.

**STATE OF NEW YORK INSURANCE DEPARTMENT and Wendy E. Cooper, Acting Superintendent of Insurance, Defendant(s).**

**No. 88 Civ. 8880 (JES).**

United States District Court,
S.D. New York.

July 18, 1990.

Jerrold E. Hyams, New York City (Andrew R. Colmant, of counsel), for plaintiffs.

Robert Abrams, Atty. Gen., New York City (David S. Cook, of counsel), for defendants.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge:

Plaintiff, the Avon Group, Inc. ("Avon"), brings this admiralty action against the Department of Insurance of the State of New York and the acting Superintendent of the Department (collectively the "State"), seeking an order enjoining the State from assessing against Avon a tax discussed more fully herein. Currently before the Court is the State's motion to dismiss the complaint for lack of subject matter jurisdiction pursuant to Fed.R. Civ.P. 12(b)(1).[1] For the reasons stated herein, the State's motion is granted.

The facts relevant to the determination of the motion are set forth in plaintiff's amended complaint. Avon is a licensed excess lines insurance broker[2] which, *inter alia*, places a type of insurance called "Ocean Marine Cargo Transit Insurance" in the London Market. *See* Amended Complaint at ¶ 5 & p. 4. This insurance covers both ocean carrier and inland carrier risks. *See id.*

Pursuant to New York law, all excess lines brokers are required to pay a percentage of gross premiums charged for excess lines insurance placed by the broker. *See* N.Y.Ins.Law § 2118(d) (McKinney Supp. 1990). However, while the tax is applicable to inland marine policies, the statute ex-

---

1. The State raises several grounds for dismissing the complaint, *i.e.*, the Eleventh Amendment of the United States Constitution, abstention, the Tax Injunction Act and lack of an admiralty question. Since the Court concludes that jurisdiction is barred by the Tax Injunction Act, the other grounds relied on by the State need not be addressed.

2. An excess lines broker is authorized to procure certain types of insurance from insurers which are not authorized to transact business in New York. *See* N.Y.Ins.Law § 2105(a) (McKinney 1985).

pressly exempts ocean marine policies from the tax. *See id.;* N.Y.Ins.Law §§ 2105(a), 2117(b)(3)(B) (McKinney 1985); *see also id.* § 1113(a)(20)(D). According to this statutory scheme, the State assessed Avon $192,673.48 for unpaid taxes on the "Ocean Marine Cargo Transit Insurance" policies for the tax years 1984–87 and threatened to revoke Avon's license if it failed to pay the assessment. *See* Amended Complaint at 5–6. Soon thereafter plaintiff brought this action.

## DISCUSSION

 Plaintiff, invoking the Court's admiralty jurisdiction, claims that the "Ocean Marine Cargo Transit Insurance" policies are exempt from the tax pursuant to both state and federal law [3] because the policies are maritime contracts. However, the Tax Injunction Act ("Act") [4] bars the district courts from adjudicating challenges to a state tax assessment if the state provides a procedurally adequate remedy in which plaintiff may raise its objections to the tax. *See Long Island Lighting Co. v. Town of Brookhaven,* 889 F.2d 428, 431 (2d Cir. 1989) (*"Lilco"*); *see also Wells v. Malloy,* 510 F.2d 74, 77 (2d Cir.1975); *cf. Great Lakes Dredge & Dock Co. v. Huffman,* 319 U.S. 293, 300–01, 63 S.Ct. 1070, 1074, 87 L.Ed. 1407 (1943). Moreover, the Act's broad language precludes even a claim that the tax itself is unconstitutional. *See FDIC v. New York,* 718 F.Supp. 191, 194 n. 13 (S.D.N.Y.1989) (quoting *Moe v. Confederated Salish and Kootenai Tribes,* 425 U.S. 463, 470, 96 S.Ct. 1634, 1639–40, 48 L.Ed.2d 96 (1976)).

Since Avon is clearly seeking to enjoin the assessment of the State's tax, its action is barred so long as Avon can raise its claims in the New York courts. [5] *See Franchise Tax Board v. Alcan Aluminium Ltd.,* —— U.S. ——, 110 S.Ct. 661, 107 L.Ed.2d 696 (1990).

██ Plaintiff has not even contended that New York law does not provide a procedurally adequate remedy to contest the assessment of the tax, and indeed could not do so, since New York does in fact provide several "plain speedy and efficient" remedies. [6] For example, Avon can obtain judicial review of the Insurance Department's assessment methodology and any revocation of Avon's license in an Article 78 proceeding which would stay any license revocation for thirty days. *See* N.Y. Ins.Law § 2124 (McKinney 1985). Furthermore, plaintiff's constitutional challenge would be cognizable in a declaratory judgment action pursuant to New York CPLR § 3001. *See Lilco, supra,* 889 F.2d at 431–32; *see also Tully v. Griffin, Inc.,* 429 U.S. 68, 75–77, 97 S.Ct. 219, 223–24, 50 L.Ed.2d 227 (1976). Moreover, any rulings by the state court would ultimately be subject to review by the Supreme Court of the United States.

## CONCLUSION

Accordingly, plaintiff's amended complaint is dismissed without prejudice to plaintiff's commencement of an action in the appropriate court of the State of New York.

IT IS SO ORDERED.

---

**3.** Plaintiff asserts that the tax on maritime insurance policies violates the Commerce Clause of the United States Constitution. *See* U.S. Const. art. 1, § 8.

**4.** The Tax Injunction Act provides that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341 (1988). The Act has been interpreted as a bar to declaratory relief as well. *See California v. Grace Brethren Church,* 457 U.S. 393, 408, 102 S.Ct. 2498, 2507–08, 73 L.Ed.2d 93 (1982).

**5.** This case, therefore, is unlike *Wells v. Malloy,* 510 F.2d 74 (2d Cir.1975) in which the taxpayer contended that the sanction imposed for nonpayment of taxes was unconstitutional but did not contest the constitutionality of the tax or the state's assessment thereof.

**6.** To satisfy this requirement, the State must provide a mechanism for a "full hearing and judicial determination" of Avon's claims. *See Rosewell v. LaSalle Nat'l Bank,* 450 U.S. 503, 514, 101 S.Ct. 1221, 1230, 67 L.Ed.2d 464 (1981).

James GENDEN, et al., Plaintiffs,

v.

MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., a corporation, Defendant.

No. 85 Civ. 7928(WCC).

United States District Court, S.D. New York.

July 18, 1990.

See also 700 F.Supp. 208.

Meites, Frackman & Mulder, Chicago, Ill. (Thomas R. Meites, Lynn Sara Frackman, Michael M. Mulder, Joan H. Burger, of counsel), Sinnreich, Wasserman & Grubin, New York City (Richard Wasserman, of counsel), for plaintiffs.

OPINION AND ORDER

WILLIAM C. CONNER, District Judge:

Plaintiffs' class counsel seeks an order to disburse the settlement fund and to award

certain fees and expenses to class counsel and to the Settlement Administrator.

## BACKGROUND

Plaintiffs James K. Genden and Alma Koppedraijer brought this securities class action against Merrill, Lynch, Pierce, Fenner & Smith ("Merrill Lynch"), alleging that Merrill Lynch failed to disclose that mortgage subsidy bonds contained in Municipal Investment Trust Funds ("MITF") it marketed were subject to the possibility of special mandatory early redemption.

A class of "original issue purchasers" was certified in the Northern District of Illinois before the case was transferred here and on January 30, 1987, I granted plaintiffs' motion to redefine the class. On April 8, 1988, the parties agreed to the terms of a settlement, embodied in a stipulation. Under the settlement, Merrill Lynch agreed to create a fund to pay the claims of class members, attorney's fees, litigation expenses, and costs, by placing $4,000,000 into an interest-bearing account ("the settlement fund"). Appropriate notice of the proposed settlement was mailed to the individual members of the class, and published in both the national and regional editions of the Wall Street Journal. No class member objected to the settlement.

In May 1988, after preliminary approval of the settlement and with the permission of the Court, class counsel hired KPMG Peat Marwick Settlement Administration Services ("Peat Marwick"), Garden City, New York as Settlement Administrator for the claims review process.

On October 14, 1988, I approved the settlement after considering memoranda submitted by the parties and holding a hearing in which I determined that the settlement was fair, reasonable and adequate. Class counsel currently moves to disburse the settlement fund and to award reasonable fees and expenses to class counsel and the Settlement Administrator.

## DISCUSSION

### I. Disbursement of Settlement Fund

■ Between June 1988 and the present, Peat Marwick received and processed 16,-545 claims to share in the settlement proceeds. Of these claims, 151 were postmarked after the claims filing deadline of November 17, 1988, but were treated as if timely filed. Claimants who failed to supply the requested information were notified by letter as to the steps required to perfect their claims. If those claimants failed to provide the information requested in the first letter, a follow-up letter was sent advising them what documentation was required to complete their claims. 1,422 claimants had incomplete or ineligible claims after the two letters and were sent a final rejection notice informing them that they were ineligible to share in the settlement proceeds. The letter also advised these claimants of their right to appeal their rejected claim and the appropriate method for doing so. None of these claimants chose to appeal.

Class counsel recommends a total of 15,-123 claims for approval, including 137 claims that were initially submitted after the claims deadline. Each of these claims has been completely documented as required by the instructions on the Court-approved claim form. This Court agrees with class counsel's recommendation that the claims of the 1,422 claimants who received a final rejection notice claims be disapproved, and that the remaining 15,123 claims be approved.

### II. Costs, Fees and Expenses

#### A. Costs of Notice

■ Class counsel expended a total of $60,014.64 between April and July 1988 to notify the class of the pendency of this action, the terms of the settlement and the procedures for submitting claims. Included in this sum are expenses for printing and preparing the notice and claims forms for mailing, first class postage, printed notice of the settlement in the Wall Street Journal and computer services necessary to create mailing labels from information regarding claimants received from Merrill Lynch, its co-underwriters and sponsors of the MITF series at issue and the MITF trustees.

This Court, having reviewed the affidavit delineating these costs in detail, determines that such steps were necessary to provide notice to the class of their right to share in the settlement proceeds. The Court therefore awards the entire sum of $60,014.64 to class counsel.

### B. Costs of Administering the Settlement Fund

■ Class counsel advanced $9,783.25 for expenses which it asserts should be charged against the settlement fund. This sum represents the maintenance fee charged by the National Westminster Bank, fees for legal services rendered on the issue of income tax liability with respect to interest earned on the settlement proceeds,[1] and the amount due the Internal Revenue Service for 1989 income taxes and a revenue ruling request filing fee. Since these costs were appropriately expended on behalf of the class, class counsel is entitled to reimbursement of $9,783.25 in expenses prior to the distribution of the settlement fund.

### C. Other Costs Advanced by Class Counsel

■ Class counsel claims to have expended $3,591.55 on travel, photocopying, long distance telephone services, expert consultation, computer legal research and express delivery services since the final approval of the settlement.

In the notice of the pendency of this action and of the proposed settlement, the class was notified that class counsel would seek approximately $60,000 in reimbursement for costs of litigation. This Court has previously authorized payment of $47,190.02 for expenses incurred prior to the

final approval of the settlement. The amount sought here will bring the total amount awarded class counsel for reimbursement of costs to $50,781.57, an amount noticeably less than the expenses estimated when the settlement was proposed. The Court, having reviewed the affidavits setting forth these expenses, finds the requested amount reasonable and hereby approves it.

### D. Attorneys' Fees and Paralegal Expenses

■ Class counsel and local counsel aver that they have expended a total of 181.3 hours on this case since September 15, 1988. Counsel have submitted affidavits and other materials detailing the quantity and types of services performed by each of the attorneys. Billed at the usual hourly rates of the individual attorneys, the unadjusted "lodestar" fee submitted by counsel is $26,190.00.

It is the fee applicant's burden to produce satisfactory evidence that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. *See Blum v. Stenson*, 465 U.S. 886, 896 n. 11, 104 S.Ct. 1541, 1547 n. 11, 79 L.Ed.2d 891 (1984). Thomas R. Meites, a partner in the Chicago law firm of Meites, Frackman & Mulder, and Richard Wasserman, a partner in the New York law firm of Sinnreich Wasserman & Grubin, have submitted affidavits stating that the hourly rates requested in this case are the current rates charged by the respective firms in their non-contingent practice for the various attorneys who have worked on this matter.[2]

---

1. Class counsel was advised by the Settlement Administrator in early 1989 that he thought the law regarding the treatment of interest income earned on designated settlement funds under the Tax Reform Act of 1986 ("Act") was unclear and that class counsel should apply to the IRS for a letter ruling clarifying the Settlement Administrator's reporting and withholding obligations under the Act. Peat Marwick submitted such a request in April 1989 on behalf of class counsel. In May 1990, class counsel and the Settlement Administrator determined to withdraw the ruling request, as the IRS had taken

no action on it and no response was likely within the next six months. Since the class counsel has paid income tax on the interest earned on the settlement fund in accordance with the most conservative possible IRS ruling, this Court finds that it is not in the interest of the class to delay further the distribution of the settlement fund.

2. Attorney Thomas R. Meites spent 14.85 hours in connection with this action at a rate of $220 an hour. Attorney Richard Wasserman spent 17.70 hours at $200 an hour, attorney Michael

The Settlement Notice sent to the class in July 1988 informed the class that the class attorneys' fees would not exceed twenty-five percent of the settlement award. The $26,190.00 award requested here, in addition to the $627,272.43 previously awarded by this Court, results in a total of $653,462.43, or 16.43 percent of the settlement fund, exclusive of accrued interest. This percentage of the settlement fund is at the low range of attorney's fees typically awarded in class action settlements. *See e.g. Weseley v. Spear, Leeds & Kellogg*, 711 F.Supp. 713, 718 (E.D.N.Y. 1989) ("In this circuit, fees typically range from 15% to 30% of the recovery."); *In Re Warner Communications Securities Litigation*, 618 F.Supp. 735, 749–50 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir.1986) (collecting cases in which fee awards ranged from 20% to 50% of the recovery). Based on the foregoing factors, class counsel's request for $26,190.00 is therefore approved.

■ Class counsel also renews its September, 1988 request for $22,542 in paralegal expenses, which this Court did not separately award in its December 7, 1988 opinion and order, 700 F.Supp. 208. In *Missouri v. Jenkins*, — U.S. —, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989), the Supreme Court ruled that if the prevailing practice in a community is to bill paralegal time separately at prevailing market rates, paralegal time should be compensated at market rates. In *Chambless v. Masters, Mates & Pilots Pension Plan*, 885 F.2d 1053 (1989), *cert. denied*, — U.S. —, 110 S.Ct. 2587, 110 L.Ed.2d 268 (1990), the Second Circuit Court, following *Jenkins*, ruled that if a finding is made that New York City law firms customarily bill at market rates for paralegal services, plaintiff's attorneys should be reimbursed for paralegal time accordingly. While each of those cases involved an award of attorney's fees pursuant to fee-shifting statutes and not an award of attorney's fees under the common fund doctrine, their reasoning is equally applicable to the present situation.

Class counsel and local counsel have submitted affidavits stating that it is customary in both the Chicago and New York legal communities to bill paralegal rates in excess of $40 an hour. In light of *Jenkins* and *Chambless*, both decided after this Court's December 1988 order, this Court grants class counsel's request for reimbursement for the 563.55 hours of paralegal time devoted to this case at the rate of $40 per hour, the amount requested in 1988, for a total award of $22,542, to be deducted from the settlement fund prior to distribution to the approved claimants.

### E. Settlement Administrator's Fees and Expenses

■ The Settlement Administrator alleges that it is owed $142,425.13 for services rendered in the claims review process since the date of the last payment approved by the Court in July 1989. The Settlement Administrator also estimates that an additional $25,787 is needed to complete the settlement administration process, including the distribution of the settlement fund to approved claimants.

G. Peter Buchband, Chief Operating Officer of Settlement Administration Services for Peat Marwick, has attached to his affidavit a list of invoices supported by a computer printout of the individual Peat Marwick staff members who provided services in administering the settlement fund, as well as a schedule showing the expenses incurred during the time period covered by the invoice. A separate estimate of fees

M. Mulder spent .70 hours at $195 an hour and attorney Joan H. Burger spent 148.05 hours at $130 an hour. While the attorneys do not aver that the requested rates are commensurate with those charged by comparable attorneys in the community, the rates quoted are reasonable in light of this Court's knowledge of hourly rates charged in the Chicago and New York legal markets. *See Purdy v. Security Sav. & Loan Ass'n*, 727 F.Supp. 1266, 1272 (E.D.Wis.1989) (survey in November 20, 1989 issue of The National Law Journal reported that attorneys' fees in Chicago range from $135–$500 for partners and $70–$200 for associates); *Litton Sys. Inc. v. American Tel. & Tel. Co.*, 613 F.Supp. 824 (S.D. N.Y.1985) (this court approved partners' rates of $125–$220, associates' rates of $75–$115, and paralegals' rates of $18 to $59).