Herbert Cox, Appellant, *v.* Lykes Brothers, Defendant, and United States Shipping Board Emergency Fleet Corporation, Respondent.

**Ships and shipping — seaman's wages — action to recover extra compensation for refusal or neglect to pay seaman's wages not suit for penalty or forfeiture — when release signed by seaman not a bar to such action — United States Shipping Board Emergency Fleet Corporation an owner within meaning of statute.**

1. An action to recover the extra compensation provided under section 4529 of the United States Revised Statutes for refusal or neglect to pay a seaman's wages when due may be maintained in the state courts. It is not a suit for a penalty or forfeiture within the meaning of section 256 of the Judicial Code conferring upon the courts of the United States exclusive jurisdiction "of all suits for penalties and forfeitures incurred under the laws of the United States."

2. A release signed by the seaman under the provisions of section 4552 of the United States Revised Statutes does not constitute a bar to such an action where upon the facts the inference is permissible that for oppression or unfair advantage the annulment of the release would be in the furtherance of justice and the trial court has so found. (U. S. R. S. § 4530, as amd. [7 U. S. Comp. Stat. § 8322].)

3. The United States Shipping Board Emergency Fleet Corporation, which operated the vessel through its agents and which as principal undertook to man, equip, victual and supply the vessel and to pay for all provisions and wages of the masters, officers and crew, is to be viewed, not as an organ of the government, but as any business

corporation engaged, under like conditions, in the prosecution of a private enterprise and must be held, like a charterer, to be an owner *pro hac vice* within the meaning of the statute. (U. S. R. S. § 4529.)

Cox v. *Lykes Brothers*, 204 App. Div. 442, reversed.

(Submitted January 10, 1924; decided February 19, 1924.)

Appeal, by permission, from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered February 9, 1923, affirming a determination of the Appellate Term which reversed a judgment of the Municipal Court of the city of New York in favor of plaintiff and directed a dismissal of the complaint.

*Silas B. Axtell* for appellant. This action to recover the sum provided by the statute was cognizable and properly brought in a state court. (*Falk* v. *Thurlow*, 114 Misc. Rep. 586; *Scarf* v. *Metcalf*, 107 N. Y. 211; *Gabrielson* v. *Waydell*, 135 N. Y. 1; *Leon* v. *Galeran*, 11 Wall. 185; *Danielson* v. *Sigsbee*, 115 Misc. Rep. 184; *Second Employers L. Cas.*, 223 U. S. 1; *Chaflin* v. *Houseman*, 93 U. S. 130; *Cook* v. *Whipple*, 55 N. Y. 150; *Brady* v. *Daly*, 175 U. S. 148; *C. F. & P. Works* v. *Atlanta*, 203 U. S. 390.)

*Ray Rood Allen* and *Roy H. Caldwell* for respondent. This action being one to recover a " penalty incurred under the Laws of the United States " the court was without jurisdiction. (*P. M. S. S. Co.* v. *Schmidt*, 241 U. S. 245; *The Moshulu*, 276 Fed. Rep. 35; *The Cubadist*, 252 Fed. Rep. 658; *The City of Montgomery*, 210 Fed. Rep. 673; *The Express*, 129 Fed. Rep. 655; *M. P. Ry. Co.* v. *Ault*, 256 U. S. 554.) If the waiting time should be held not a penalty but wages as the plaintiff claims then the plaintiff was barred by the release. (U. S. R. S. § 4552; *Rosenberg* v. *Doe*, 146 Mass. 191; *Jensen* v. *Barber S. S. Line*, 110 Misc. Rep. 632.) The word

" owner " in section 4529 of the Revised Statutes upon which this action is based does not include a mere operator such as the United States Shipping Board Emergency Fleet Corporation. (*City of Montgomery,* 210 Fed. Rep. 673; *Lake Monroe,* 250 U. S. 246.)

Cardozo, J. Plaintiff, a seaman, serving as chief steward on a merchant vessel, the *Bethlehem Bridge,* left Galveston, Texas, on July 28, 1919, and after a voyage to foreign shores returned to the home port on January 22, 1920. The *Bethlehem Bridge,* though registered in the name of the United States of America, was operated by the United States Shipping Board Emergency Fleet Corporation through Lykes Brothers as agents, and the principal undertook, not only to man, equip, victual and supply the vessel, but also to provide and pay for all provisions and wages of the masters, officers and crew. Upon arrival at Galveston, all the members of the crew, with the exception of the plaintiff, were discharged and paid at once. The plaintiff's wages were withheld till March 24, 1920, when payment up to January 22 was made in accordance with the articles. Upon receiving this payment, plaintiff executed a release. Section 4529 of the United States Revised Statutes (7 U. S. Compiled Statutes, § 8320, p. 8817) fixes the time within which wages must be paid, and then provides as follows: " Every master or owner who refuses or neglects to make payment in the manner hereinbefore mentioned without sufficient cause shall pay to the seaman a sum equal to two days' pay for each and every day during which payment is delayed beyond the respective periods, which sum shall be recoverable as wages in any claim made before the court." Plaintiff sues for the difference between the wages paid and those due under the statute.

The jurisdiction of the state courts is the first question to be determined. Section 256 of the Judicial Code confers upon the courts of the United States exclusive

jurisdiction " of all suits for penalties and forfeitures incurred under the laws of the United States." The Appellate Division found the present suit to be one for a penalty or forfeiture within the meaning of this statute. We do not so regard it. Congress has expressly said that the extra compensation, when due, " shall be recoverable as wages." This would seem decisive, without more, that in determining the bounds of jurisdiction, it is not to be classified as a penalty. There was no thought that the state courts, which have undoubted jurisdiction to give judgment for wages in the strict sense, should be shorn of jurisdiction to give judgment for the statutory incidents. This conclusion is fortified when we search for the purpose of the statute. The purpose, or at least the predominant one, was, not punishment of the master or owner, but compensation to the seaman. Delay means loss of opportunity to ship upon another vessel. It means hardship during the term of waiting, the sufferer often improvident, and stranded far from home. " In all fairness he should recover more than the amount due him for wages earned " (*Calvin* v. *Huntley*, 178 Mass. 29, 32). How much this extra amount should be would be often a troublesome question if it were left open in every case. " Hence it might be deemed advisable to have this indefinite element made definite by a general law with reference to which the parties may conclusively be presumed to have contracted, and which, therefore, should be taken to be the law of the contract " (*Calvin* v. *Huntley, supra; Gerber* v. *Spencer,* 278 Fed. Rep. 887; *Covert* v. *British Brig Wexford,* 3 Fed. Rep. 577, 578, 579). The case cited from Massachusetts is authority for the ruling that an action for extra wages under section 4527 of the United States Revised Statutes, which does not differ in essentials from section 4529, may be maintained in the state courts, and is not an action for a penalty. In harmony with this ruling are decisions of the Supreme Court of the United States, excluding from the class of

# 380 COX v. LYKES BROTHERS.

penalties an action against the infringer of the copyright of a dramatic composition, who must pay not less than $100 for the first and $50 for every subsequent performance (*Brady* v. *Daly*, 175 U. S. 148) and an action under the anti-trust law for the recovery of treble damages (*Chattanooga Foundry & Pipe Works* v. *City of Atlanta*, 203 U. S. 390, affg. 127 Fed. Rep. 23). The defendant refers to *Pacific Mail S. S. Co.* v. *Schmidt* (241 U. S. 245) where, in the discussion of a different question, the extra payment due under section 4529 is spoken of as a penalty, which, of course, in a loose sense it is, since it is an exaction dependent upon a default not sufficiently excused. Forms and phrases of this kind, accurate enough for rough identification or convenient description, do not carry us very far in the solution of our problem. This is emphasized when we recall that the writer of the opinion in *Pacific S. S. Co.* v. *Schmidt* concurred, while a member of the Supreme Judicial Court of Massachusetts, in the judgment rendered by that court in *Calvin* v. *Huntley*. The defendant refers also to *Missouri Pacific R. R. Co.* v. *Ault* (256 U. S. 554), which had to do with the liability of the United States director-general of railroads under a statute of Arkansas. By that statute, if wages are not paid to an employee of a railroad within seven days, upon his discharge with or without cause, then " as a penalty for such non-payment," the wages shall continue at the same rate till paid. The question was whether this was a liability which Congress intended that the federal government should assume. We are to remember that the same provision may be penal as to the offender and remedial as to the sufferer (*Huntington* v. *Attrill*, 146 U. S. 657, 667; *Loucks* v. *Standard Oil Co. of N. Y.*, 224 N. Y. 99). The nature of the problem will determine whether we are to take one viewpoint or the other. From the viewpoint of the government, the court found this provision predominantly penal, as well it might, not only because the statute so declared, but also because

of the differing situation of seamen on the one hand and railroad workers on the other. Here Congress, imposing a liability for the benefit of seamen, has put it on the same plane as a liability for wages, and has said that the two shall be enforcible together.

The next question to be considered is the effect of the release. Section 4552 of the United States Revised Statutes provides that upon the completion of a voyage, the master and each seaman shall sign a mutual release. " Such release, so signed and attested, shall operate as a mutual discharge and settlement of all demands for wages between the parties thereto, on account of wages, in respect of the past voyage or engagement." While this provision stood alone, the courts held that the release was conclusive upon a seaman, to the same extent as upon the master, in the absence of a showing of fraud or duress sufficient to avoid it under the ordinary rules of law (*Rosenberg* v. *Doe*, 146 Mass. 191). Congress evidently felt that seamen were in need of additional protection against improvidence and oppression. Accordingly in 1915 it amended section 4530 of the United States Revised Statutes (7 U. S. Compiled Statutes, § 8322, pp. 8819, 8820) by the addition of the following proviso: " provided further, that notwithstanding any release signed by any seaman under section 4552 of the Revised Statutes any court having jurisdiction may upon good cause shown set aside such release and take such action as justice shall require." The liberalizing effect of this amendment was considered in *Pacific Mail S. S. Co.* v. *Lucas* (258 U. S. 266, affg. 264 Fed. Rep. 938). The policy dictating the amendment has ancient recognition. " Seamen are a class of persons remarkable for their rashness, thoughtlessness and improvidence " (Story, J., in *Brown* v. *Lull*, 2 Sumner, 443). The amendment means that if unfair advantage is taken of their necessities or ignorance, they are no longer to be concluded by releases which throw their rights away. The courts

under the present act may relieve from oppression, though it fall short of fraud or duress in the rigor of its constraint, if thereby justice will be done.

We think the inference permissible that for oppression or unfair advantage the annulment of this release would be in furtherance of justice. The trier of the facts so held, and unless there is no basis in the record for the exercise of discretion, we are not at liberty in this court to say that he was wrong. The plaintiff was told that no money would be paid without the signing of the paper. He had been kept waiting many weeks; all his money was spent; he was at the end of his resources. He signed what was put before him because he was unable to wait longer. A different question would be here if his right to wages were shown to have been the subject of reasonable controversy. So far as the record shows, payment was withheld without color of excuse. Upon such a showing, wages earned during delay were as plainly due as wages earned during the voyage. Release of the whole, when the right is uncontested, is not a fair condition of payment of a part. There was room, indeed, for misunderstanding whether wages of both kinds were within the terms of the release though it were allowed to stand as written. The plaintiff speaks of the presence of a lawyer, but what was said is at least consistent with advice and belief that any claim under the statute would survive for enforcement in the future. This much at least is plain. The abandonment of the statutory wages did not emerge from the transaction as the product of treaty and discussion in return for the concession of a payment withheld on reasonable grounds. We conclude that the release does not constitute a bar.

The final question is whether the United States Shipping Board Emergency Fleet Corporation is an owner of the vessel within the meaning of the statute (U. S. R. S. § 4529). There is no occasion to rehearse the origin of

this corporation, and its function in the scheme of government. They have been traced and expounded in authoritative decisions (*Sloan Shipyards Corpn.* v. *U. S. S. B. E. F. Corp.*, 258 U. S. 549; *The Lake Monroe*, 250 U. S. 246, 251). The law is now settled that like any business corporation it may be sued upon its contracts, and that it is not to be deemed a sharer in the government's immunity (*Sloan Shipyards Corpn.* v. *U. S. S. B. E. F. Corp.*, *supra; Buffalo Union Furnace Co.* v. *U. S. S. B. E. F. Corp.*, 291 Fed. Rep. 23, 24). The act " contemplated a corporation in which private persons might be stockholders," and though, as it happened, the United States took all the shares, it did not change thereby " the legal position of the company " (*Sloan Shipyards Corpn.* v. *U. S. S. B. E. F. Corp.*, *supra*). We are to view the defendant, therefore, not as an organ of the government, but as any business corporation engaged, under like conditions, in the prosecution of a private enterprise. In operating the *Bethlehem Bridge*, it acted for itself alone, with possession and control complete and unrestricted. The contracts of employment were its contracts; the stores its stores; the payments for wages, as well as for all other expenses, its payments; the profits its own, and its own the losses. If the action were for wages proper, its liability would not be questioned. Lykes Brothers were merely agents, and the undisclosed principal was chargeable upon contracts made for its account in the business of the agency. Liability for the statutory wages following default is commonly an incident to liability for the agreed wages prior to default, and the cases must be rare in which separation will be proper. We think the corporation, operating in the conditions stated, must be held, like a charterer, to be an owner *pro hac vice* (*Thorp* v. *Hammond*, 12 Wall. 408, 416; *Leary* v. *U. S.*, 14 Wall. 607; *Reed* v. *U. S.*, 11 Wall. 591, 601; *Everett* v. *U. S.*, 277 Fed. Rep. 259; *Drinkwater* v. *The Spartan*, 7 Fed. Cas. 4085).

The judgment of the Appellate Division and the determination of the Appellate Term should be reversed, and the judgment of the Municipal Court affirmed, with costs of all appeals.

All concur.

Judgment accordingly.