William SIPE, individually and on behalf of all other persons who are similarly situated, Plaintiff-Appellant in Nos. 81–2689, 81–3005 and Cross-Appellee,

v.

AMERADA HESS CORPORATION, Defendant-Third Party Plaintiff-Appellant in Nos. 81–2690, 81–3006 and Cross-Appellee,

v.

STATE of New Jersey, DEPARTMENT OF LABOR AND INDUSTRY OF the STATE OF NEW JERSEY, John J. Horn, individually and in his capacity as Commissioner of the Department of Labor and Industry, The Division of Unemployment and Disability Insurance and Joseph S. Viviani, individually and in his capacity as Director of the Division of Unemployment and Disability Insurance, Third Party Defendants-Appellants in No. 81–2692.

Ralph NOTARGIACOMO, individually and on behalf of all other persons who are similarly situated, Plaintiff-Appellant in Nos. 81–2689, 81–3005 and Cross-Appellee,

v.

UNITED STATES LINES, INC., Defendant-Third Party Plaintiff-Appellant in Nos. 81–2691, 81–3007 and Cross-Appellee,

v.

STATE of New Jersey, DEPARTMENT OF LABOR AND INDUSTRY OF the STATE OF NEW JERSEY, John J. Horn, individually and in his capacity as Commissioner of the Department of Labor and Industry, The Division of Unemployment and Disability Insurance and Joseph S. Viviani, individually and in his capacity as Director of the Division of Unemployment and Disability Insurance, Third Party Defendants-Appellants in No. 81–2692.

Donald HENDERSON, Jr., individually and on behalf of all other persons who are similarly situated, Plaintiff-Appellant in Nos. 81–2689, 81–3005,

v.

SEA–LAND SERVICE, INC., Defendant-Appellee,

and

State of New Jersey, Department of Labor and Industry of the State of New Jersey, John J. Horn, individually and in his capacity as Commissioner of the Department of Labor and Industry, The Division of Unemployment and Disability Insurance and Joseph S. Viviani, individually and in his capacity as Director of the Division of Unemployment and Disability Insurance, Defendants-Appellants in No. 81–2692.

Nos. 81–2689 to 81–2692 and 81–3005 to 81–3007.

United States Court of Appeals, Third Circuit.

Argued May 24, 1982.

Decided Sept. 10, 1982.

George J. Cappiello, Jr. (argued), Phillips & Cappiello, New York City, Waters, McPherson, Hudzin & McNeill, Jersey City, N.J., for William Sipe, Ralph Notargiacomo, Donald Henderson, Jr.

Milton B. Conford (argued), Wilentz, Goldman & Spitzer, Woodbridge, N.J., for Amerada Hess Corp.

Stephen B. Wiley (argued), Robert Goldsmith, Wiley, Malehorn & Sirota, Morristown, N.J., for United States Lines, Inc.

Robert J. Attaway (argued), Princeton, N.J., Jeffrey L. Reiner, Meyner & Landis, Newark, N.J., for Sea-Land Service, Inc.

Michael S. Bokar (argued), Deputy Atty. Gen., Erminie L. Conley, Asst. Atty. Gen., Irwin I. Kimmelman, Atty. Gen. of N.J., Trenton, N.J., for State of New Jersey, et al.

Before SEITZ, Chief Judge, and SLOVITER and BECKER, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

In these consolidated cases, plaintiff seamen allege that the withholding of a portion of their wages by their employers pursuant to New Jersey's unemployment compensation and temporary disability benefits tax laws violates 46 U.S.C. § 601. They seek injunctive relief, a refund of monies withheld, and additional damages provided for by 46 U.S.C. § 596. The district court

held that 46 U.S.C. § 601 prohibits the state of New Jersey from requiring employers of merchant seamen to withhold portions of their wages, enjoined both the state and the employers from future withholding, but denied plaintiffs' request for refunds and for damages under 46 U.S.C. § 596. The state of New Jersey and two of the employers appeal from the district court's order of injunctive relief, while the seamen cross-appeal from the court's denial of their claims for monetary relief. Because we conclude that the Tax Injunction Act, 28 U.S.C. § 1341, and the principle of comity precluded the district court from entertaining these actions, we do not reach the substantive issues presented. Instead, we will vacate the district court's order and remand for dismissal of the suits.

## I.

The facts, which are not disputed, were set forth in the opinion of the district court. *Sipe v. Amerada Hess Corp.*, 519 F.Supp. 781 (D.N.J. 1981). Plaintiff Sipe was employed by defendant Amerada Hess Corporation (a Delaware corporation with its principal place of business in New Jersey) to serve as an able-bodied seaman on the company's vessel The Hess Voyager. Sipe was paid a regular monthly wage of $874.95 plus "found" (*i.e.*, food and lodging) and bonus. He was dismissed by Amerada Hess at the scheduled conclusion of the voyage less than four weeks later. When he received his wages, Sipe discovered that $19.68 had been withheld by Amerada Hess in compliance with New Jersey unemployment compensation and temporary disability benefits laws.[1]

Plaintiff Henderson was employed as a third mate aboard the S.S. Baltimore, a vessel owned by defendant Sea-Land Service, Inc. (a Delaware corporation with its principal place of business in New Jersey), for a voyage of approximately 1½ months.

Henderson was paid at a rate of $1,664.18 per month plus found and bonus. When he was discharged at the conclusion of the voyage, he learned that $0.54 had been withheld from his wages by Sea-Land pursuant to New Jersey unemployment compensation law.

Plaintiff Notargiacomo served on the S.S. American Legion, a vessel owned and operated by defendant United States Lines, Inc. (a Delaware corporation with its principal place of business in New Jersey). At the end of a voyage of approximately 1½ months, Notargiacomo was discharged. He was paid an ordinary seaman's wage of $798.33 per month plus found and bonus, and $13.48 was withheld from his earnings by his employer pursuant to New Jersey unemployment compensation law.

On March 14, 1980, plaintiffs, purporting to sue on behalf of themselves and a class consisting of all other seamen similarly situated, filed three separate actions against their employers in the United States District Court for the District of New Jersey. Each complaint was predicated on the same legal theory and sought similar relief, and all three plaintiffs were represented by the same counsel. The complaints alleged that the employers' withholding of monies from plaintiffs' wages for payment to the state of New Jersey violated 46 U.S.C. § 601, which provides in part:

> That no part of the wages due or accruing to a ... seaman ... shall be withheld pursuant to the provisions of the tax laws of any State, Territory, possession, or Commonwealth, or a subdivision of any of them.

Plaintiffs sought to enjoin their employers from further withholding under New Jersey tax law. Plaintiffs also sought reimbursement for the deductions already made and additional monetary relief pursuant to 46 U.S.C. § 596, which requires employers

---

1. Plaintiffs' original complaints alleged that the monies withheld by all three employers were pursuant to New Jersey temporary disability benefits law. In fact, although all three employers have admitted withholding under New Jersey unemployment compensation law, only

Amerada Hess also withheld for temporary disability benefits. The Henderson complaint was amended to reflect this fact, and the other complaints were apparently treated as amended in this regard as well.

to pay seamen two days' pay for every day that full payment of wages has been delayed if the payment has been withheld "without sufficient cause." The three actions were consolidated by the district court.

The three employers defended on similar grounds. They claimed that they withheld seamen's wages pursuant to the requirements of the New Jersey Unemployment Compensation Law and the Temporary Disability Benefits Law, N.J. Stat. Ann. §§ 43:21–1 *et seq.*, and as agents of the state of New Jersey, and that the Federal Unemployment Tax Act, 26 U.S.C. § 3305(f), affirmatively authorizes the withholding of seamen's wages pursuant to state unemployment compensation laws. Section 3305(f) provides in part:

> The Legislature of any State in which a person maintains the operating office, from which the operations of an American vessel operating on navigable waters within or within and without the United States are ordinarily and regularly supervised, managed, directed and controlled, may require such person and the officers and members of the crew of such vessel to make contributions to its unemployment fund under its State unemployment compensation law approved by the Secretary of Labor under section 3304 and otherwise to comply with its unemployment compensation law with respect to the service performed by an officer or member of the crew on or in connection with such vessel to the same extent and with the same effect as though such service was performed entirely within such State.

Two of the three employers, Amerada Hess and United States Lines, filed separate third-party complaints against the state of New Jersey, the New Jersey Department of Labor and Industry and its Commissioner, and the New Jersey Division of Unemployment and Disability Insurance and its Director. In these third-party complaints, Amerada Hess and United States Lines alleged that they had withheld monies from plaintiffs' wages as agents or trustees for the state of New Jersey, according to the mandates of state law, and on the advice of state officials that such withholding was proper. The employers sought indemnification by the state in the event that the withholding should be found to have been improper, and a declaration that if the withholding was prohibited by federal law, they would not be in violation of New Jersey state law by failing to withhold. The third employer, Sea-Land, moved to join the state defendants as parties defendant pursuant to Fed. R. Civ. P. 19(a). The district court granted this motion. Plaintiff Henderson then filed an amended complaint against Sea-Land and the state defendants seeking refunds, additional monetary relief under 46 U.S.C. § 596, and permanent injunctions against both the employer and the state defendants. Sea-Land filed an answer and cross-claim against the state defendants seeking the same relief as did the other employers' third-party complaints against the state. The employers moved to dismiss the complaints for failure to state a claim or for summary judgment. New Jersey joined in defendants' motions and asserted that any monetary claims against it were barred by sovereign immunity. The plaintiff seamen filed cross-motions for summary judgment.

The district court granted plaintiff seamen's motions for summary judgment. The court held that 46 U.S.C. § 601 prohibited New Jersey from requiring the employers of seamen to deduct portions of their wages to satisfy the state's unemployment compensation or temporary disability benefits laws. It rejected the defendants' contention that section 601 applied only to state income taxes, as well as the argument that withholding pursuant to state unemployment tax laws was affirmatively authorized by 26 U.S.C. § 3305(f). The court concluded that although 26 U.S.C. § 3305(f) permitted a state to require contributions from seamen pursuant to an unemployment compensation scheme, 46 U.S.C. § 601 prohibited it from using the withholding method to do so.

The district court granted a permanent injunction restraining the employers from

making any future deductions from the seamen's wages for the purpose of complying with the New Jersey unemployment compensation and temporary disability laws, and also enjoined the state from enforcing against merchant seamen the withholding provisions of its statute. However, the court denied plaintiffs' requests that either the employers or the state of New Jersey refund the monies withheld from their wages, stating that the Eleventh Amendment barred recovery of these funds. The court also denied plaintiffs' request for imposition of damages under 46 U.S.C. § 596, finding that the plaintiffs had not demonstrated that the defendant-employers withheld their wages "without sufficient cause" within the meaning of section 596. In support of this conclusion, the court stated that the employers were operating under the requirements of a state law which made them fully liable for their employees' contributions if they failed to make the deductions, and that they had also relied on a 1960 U.S. Department of Labor memorandum stating the Department's view that withholdings pursuant to state unemployment compensation laws were valid under federal law.

On appeal to this court, New Jersey and two of the three employers (Amerada Hess and United States Lines) challenge the district court's holding that 46 U.S.C. § 601 prohibits the state and employers from withholding seamen's contributions under state unemployment and/or temporary disability benefits laws. The seamen cross-appeal from the district court's denial of the monetary relief sought.

## II.

### A.

■ Neither the parties nor the district court considered the applicability of the Tax Injunction Act in the proceedings below, nor was the issue raised in any of the briefs initially filed with this court. The possibility that this action may be barred by the Tax Injunction Act was first raised by New Jersey in a letter submitted after the filing of the appellate briefs but before oral argument. Nevertheless, because this question goes to the jurisdiction of the district court to entertain these actions, see *Exxon Corp. v. Hunt*, 683 F.2d 69 at 72 (3d Cir. 1982),[2] it is appropriate that we consider it at this time. See *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, —— U.S. ——, ——, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982).

The Tax Injunction Act, 28 U.S.C. § 1341, provides that

The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under state law where a plain, speedy and efficient remedy may be had in the courts of such state.

The Supreme Court has said of the Act:

The statute "has its roots in equity practice, in principles of federalism, and in recognition of the imperative need of a State to administer its own fiscal opera-

---

**2.** The predecessor of section 1341 expressly provided that

Notwithstanding the foregoing provisions of this paragraph [setting out the original jurisdiction of the district courts], no district court shall have jurisdiction of any suit to enjoin, suspend, or restrain the assessment, levy, or collection of any tax imposed by or pursuant to the laws of any State where a plain, speedy, and efficient remedy may be had at law or in equity in the courts of such State.

Act of Aug. 21, 1937, ch. 726, 50 Stat. 738. There is no indication that the change in language which accompanied the 1948 statutory codification was designed to alter the substance of the statute in any way. Indeed, in *California v. Grace Brethren Church*, —— U.S.

——, ——, —— & n. 22, ——, 102 S.Ct. 2498, 2502, 2508 & n. 22, 2513, 73 L.Ed.2d 93 (1982), the Court on numerous occasions referred to the Tax Injunction Act in jurisdictional terms. Further, courts of appeals have considered the Tax Injunction Act notwithstanding the failure to raise the issue in the district court. See *Illinois Central Railroad v. Howlett*, 525 F.2d 178, 180 (7th Cir. 1975), *cert. denied*, 424 U.S. 976, 96 S.Ct. 1482, 47 L.Ed.2d 746 (1976); *City of Houston v. Standard-Triumph Motor Co.*, 347 F.2d 194, 197 (5th Cir. 1965), *cert. denied*, 382 U.S. 974, 86 S.Ct. 539, 15 L.Ed.2d 466 (1966). See also *Kimmey v. H.A. Berkheimer, Inc.*, 376 F.Supp. 49 (E.D. Pa. 1974) (Higginbotham, J.), *aff'd mem.*, 511 F.2d 1394, 1397 (3d Cir. 1975).

tions." *Tully v. Griffin, Inc.,* [429 U.S. 68, 73, 97 S.Ct. 219, 222, 50 L.Ed.2d 227 (1976) ]. This last consideration was the principal motivating force behind the Act: this legislation was first and foremost a vehicle to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes. 81 Cong.Rec. 1415 (1937) (remarks of Sen. Bone). . . .

*Rosewell v. LaSalle National Bank,* 450 U.S. 503, 522, 101 S.Ct. 1221, 1233, 67 L.Ed.2d 464 (1981) (footnote omitted). The state of New Jersey and Amerada Hess (hereafter "the state")[3] argue that the Tax Injunction Act applies to these actions. The plaintiff seamen, joined on this issue by United States Lines and Sea-Land (hereafter "plaintiffs"),[4] contend that the district court properly reached the merits of the case.

In considering whether federal court actions may be maintained which implicate state tax law administration, there are two separate, though related, paths which can be taken, illustrated by two decisions of the Supreme Court last Term. *In California v. Grace Brethren Church,* —— U.S. ——, 102 S.Ct. 2498, 73 L.Ed.2d 93 (1982), the Court held that the Tax Injunction Act prohibited maintenance of a suit filed by churches and religious schools seeking declaratory and injunctive relief against the Secretary of Labor and California taxing authorities alleging that the Federal Unemployment Tax Act and corresponding state tax provisions violate the First Amendment to the Federal Constitution. In the earlier case, *Fair Assessment in Real Estate Association, Inc. v. McNary,* 454 U.S. 100, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981), plaintiff taxpayers brought an action under 42 U.S.C. § 1983 for damages to redress the allegedly unconstitutional administration of a state and county tax system. The Court, without reaching the issue of the applicability of the

terms of the Tax Injunction Act, held that the principle of comity bars federal courts from granting damages relief in such a case. Both approaches, that applying the Act itself and that following the underlying principle of comity, instruct our decision in the instant case.

**B.**

■ Initially, it cannot be seriously disputed that the unemployment compensation and disability benefits contributions mandated by New Jersey law are "taxes" within the meaning of the Tax Injunction Act. The state taxes involved in *California v. Grace Brethren Church,* where the Supreme Court applied the Tax Injunction Act, were state unemployment compensation taxes collected, as in this case, pursuant to the Federal Unemployment Tax Act.

Plaintiffs argue, however, that the district court did not enjoin the "collection" of any state tax as that term is used in the Tax Injunction Act, but rather only a specific *method* of collection, i.e. withholding, since the seamen's obligation ultimately to pay the taxes is conceded. They rely on Judge Friendly's opinion in *Wells v. Malloy,* 510 F.2d 74 (2d Cir. 1975). In *Wells,* the plaintiff had attempted to enjoin the enforcement of a state motor vehicle purchase and use tax scheme which directed state officials to suspend the driver's license of anyone failing to pay the required tax. The plaintiff in *Wells* did not dispute that the tax was due, but alleged that he was unable to pay and that the statutory provision requiring the suspension of his license violated the Equal Protection Clause. The district court held the suit barred by the Tax Injunction Act. The Second Circuit reversed, holding that the plaintiff was not seeking to restrain the "collection" of a state tax under the Act, which Congress intended to encompass "methods similar to assessment and levy, . . . that would pro-

---

**3.** Because the parties are realigned on the issue of jurisdiction, we will refer to those challenging the district court's jurisdiction as "the state", although *Amerada Hess* joins with New Jersey in these arguments.

**4.** For convenience, we will refer to those parties who argue that the district court properly exercised jurisdiction as "plaintiffs", although two defendant employers join in some of these arguments.

duce money or other property directly, rather than indirectly through a more general use of coercive power." 510 F.2d at 77. The court distinguished the case before it on the ground that the taxpayer was not challenging the validity of the particular taxes imposed but only the unusual sanction of license suspension for non-payment of a tax admittedly due.

■ Even if *Wells* survives the reasoning in more recent Supreme Court cases, an issue we do not reach, we fail to see how *Wells* provides any support for plaintiffs' position. New Jersey employs the withholding system challenged here as a means of enforcing its unemployment compensation tax scheme through payroll deductions transmitted directly to the state. The withholding system at issue here is therefore patently an "assessment [or] levy" used to "produce money or other property directly," which the Second Circuit in *Wells* indicated was within the ambit of the Tax Injunction Act. The policy of non-interference with state revenue collection served by the Tax Injunction Act applies fully to attempts to enjoin withholding, which often comprises an essential administrative mechanism for the orderly collection of taxes. In the only case we have found which expressly considered the interplay between 46 U.S.C. § 601 and the Tax Injunction Act, the court held that the Tax Injunction Act barred a declaratory judgment action brought by shipowners against the state tax commissioner alleging that section 601 prohibited the withholding of state income taxes from their employees' wages. *Zenith Dredge Co. v. Corning,* 231 F.Supp. 584 (W.D. Wis. 1964).

## C.

Plaintiffs next contend that at most only a part of their claims falls within the ambit of the Tax Injunction Act. They assert that the Tax Injunction Act is inapplicable to their claims for damages and to their claims which are directed against their private employers rather than the state.

In arguing that the Tax Injunction Act cannot be construed to bar their damage claims, plaintiffs refer to the literal language of the Tax Injunction Act, which divests the district courts only of jurisdiction to *"enjoin, suspend or restrain* the . . . collection of any tax under state law" (emphasis added). The Supreme Court has expressly reserved the question whether the Tax Injunction Act, standing alone, would bar suits for damages in state tax cases. *Fair Assessment in Real Estate Association, Inc. v. McNary,* 102 S.Ct. at 181. There is some language in the later *Grace Brethren* opinion, however, which suggests such a statutory construction. The Court, in concluding that Congress did not intend to distinguish between declaratory and injunctive relief, stated, "[T]he legislative history of the Tax Injunction Act demonstrates that Congress worried not so much about the form of relief available in the federal courts, as about divesting the federal courts of jurisdiction to interfere with state tax administration." 102 S.Ct. at 2508 n.22. This broad policy may apply to damages actions at least where, as here, the damages claim could not succeed without a determination as to the underlying validity of the state tax scheme.

■ However, we need not decide whether the Tax Injunction Act alone would bar plaintiffs' claims for damages in this case since in *Fair Assessment* the Court held that related principles of comity prohibit a federal court from granting damages relief in state tax cases. In *Fair Assessment,* a non-profit taxpayers' association brought suit under 42 U.S.C. § 1983 against county and state tax officials seeking actual and punitive damages for the allegedly unconstitutional administration of the local property tax system. The Court rejected the contention "that damages actions are inherently less disruptive of state tax systems than injunctions or declaratory judgments." 102 S.Ct. at 184. The Court reasoned:

> Petitioners will not recover damages under § 1983 unless a district court first determines that respondents' administration of the County tax system violated petitioners' constitutional rights. In effect, the district court must first enter a

declaratory judgment like that barred in *Great Lakes [Dredge & Dock Co. v. Huffman,* 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943)]. We are convinced that such a determination would be fully as intrusive as the equitable actions that are barred by principles of comity. . . .

. . . .

. . . In short, petitioners action would "in every practical sense operate to suspend collection of the state taxes . . .," *Great Lakes,* 319 U.S., at 299, [63 S.Ct., at 1073], a form of federal court interference previously rejected by this Court on principles of federalism.

*Id.* at 184–85 (footnote omitted). *Fair Assessment* compels the conclusion that the principle of comity relied on there is equally applicable to the claims for monetary damages in this case.

Plaintiffs' argument that this action is one between private parties which does not implicate the comity concerns of the Tax Injunction Act is unpersuasive. Although the original complaints named only the shipowners as defendants, the amended complaint by Henderson named New Jersey as a defendant, and the state has been joined as a third party defendant to the other two actions. The district court's order enjoined the state as well as the employers from future withholding. More importantly, even those claims directed solely to the employers turn on the underlying question of the validity of the state withholding tax system. Since it is impossible to adjudicate the claims against the employers without first determining the validity of the state tax system, the policy concerns of the Tax Injunction Act are fully implicated. Similarly, the damage claims against the employers cannot succeed without the district court in effect rendering a declaratory judgment as to the validity of the state tax system challenged. In *Grace Brethren,* suit was brought against the United States Secretary of Labor, who was characterized in the dissenting opinion as "the principal defendant." *California v. Grace Brethren Church,* 102 S.Ct. at 2514 n. 2. His presence did not render the Act inapplicable, nor did the Court accept the suggestion that it should bifurcate the claims and restrict its decision to the validity of the Federal Unemployment Tax Act. *See id.* at 2513 n. 38. The Court looked to the lawsuit's practical effect on the actions of state officials. *Id.* A similar effect would follow were we to accept plaintiffs' argument that the district court had jurisdiction over some, if not all, of the claims asserted. Thus, applying either the Tax Injunction Act or the principle of comity, we are unable to distinguish between the claims against the state and those against the employers, or between claims for injunctive relief and those for monetary relief.

### D.

■ Plaintiffs' principal contention is that they do not have a "plain, speedy and efficient" remedy at state law. Admittedly, neither the Tax Injunction Act nor the principle of comity would bar this suit in the absence of such a state remedy. 28 U.S.C. § 1341; *Fair Assessment,* 102 S.Ct. at 186 & n. 8. The Supreme Court has stated that the "plain, speedy, and efficient remedy" language requires that the state provide plaintiff a forum for the full assertion of his federal rights that meets certain minimal procedural criteria. *See Rosewell v. LaSalle National Bank,* 450 U.S. at 512–13, 101 S.Ct. at 1228–1229. The Court has counselled, however, that "[i]n order to accommodate these concerns [the historical reluctance of the federal courts to interfere with the operation of state tax systems] and be faithful to the congressional intent 'to limit drastically' federal court interference with state tax systems, we must construe narrowly the 'plain, speedy and efficient' exception to the Tax Injunction Act." *Grace Brethren,* 102 S.Ct. at 2510.

■ The state asserts that the New Jersey courts provide plaintiffs with an adequate forum in which to raise their claims asserted here. It refers to the New Jersey Supreme Court's opinion in *Peper v. Princeton University Board of Trustees,* 77 N.J. 55, 74, 389 A.2d 465, 474–75 (1978), as authority demonstrating that the New Jersey

courts have the jurisdiction to interpret federal statutes and decide federal claims. Further, New Jersey has a statute providing for declaratory judgment actions, N.J. Stat. Ann. 2A:16–53, which the New Jersey Supreme Court has stated may be used to challenge the validity of a state statute. *Abelson's Inc. v. New Jersey State Board of Optometrists,* 5 N.J. 412, 416–18, 75 A.2d 867, 869 (1950). State courts have concurrent jurisdiction with federal district courts over cases arising under the Constitution, laws or treaties of the United States, unless exclusive jurisdiction has been granted to the federal courts. *See Exxon Corp. v. Hunt,* 683 F.2d 69 (3d Cir. 1982). Plaintiffs do not seem to dispute that the New Jersey courts could interpret the relevant federal statutes, but argue that there is exclusive jurisdiction in federal court over at least a portion of their claims. They rely on two federal statutes.

■ The first statute referred to by plaintiffs, 28 U.S.C. § 1333, provides for exclusive jurisdiction in admiralty or maritime cases. Its relevant language provides:

> The district courts shall have original jurisdiction, exclusive of the courts of the States, of: (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled.

Despite the general language of section 1333, the Supreme Court has made clear that:

> Admiralty's jurisdiction is "exclusive" only as to those maritime causes of action begun and carried on as proceedings *in rem.* . . . It is this kind of *in rem* proceeding which state courts cannot entertain. But [§ 1333] does leave state courts "competent" to adjudicate maritime causes of action in proceedings *"in personam,"* that is, where the defendant is a person, not a ship or some other instrument of navigation. . . . [A] state, "having concurrent jurisdiction, is free to adopt such remedies, and to attach to them such incidents, as it sees fit" so long as it does not attempt to make changes in the "substantive maritime law."

*Madruga v. Superior Court,* 346 U.S. 556, 560–61, 74 S.Ct. 298, 300–301, 98 L.Ed. 290 (1954). It is undisputed that this action was not brought *in rem,* and it is therefore clear that the exclusive jurisdiction provision of section 1333 is not applicable, and that the New Jersey courts are not precluded by section 1333 from asserting concurrent jurisdiction over the present *in personam* claims.

■ Plaintiffs assert, however, that dismissing these actions would be futile, since they could simply reintroduce them in the district court as *in rem* proceedings to which the strictures of section 1333 would apply. We need not consider whether plaintiffs are correct that they could simply recharacterize these claims as actions *in rem* within the meaning of *Madruga,* since we are not free to ignore jurisdictional bars based on speculation as to what plaintiffs may or may not subsequently do. Moreover, even if plaintiffs were to attempt to reintroduce their claims as *in rem* proceedings, their assumption that this would put them outside the ambit of the Tax Injunction Act is incorrect. The Tax Injunction Act applies if a "plain, speedy and efficient" state remedy exists. Whether or not these actions could be brought *in rem,* and hence arguably within the exclusive federal jurisdiction provision of section 1333, it is indisputable that they can also be brought *in personam,* and as such could be maintained in state court. Plaintiffs' attempt to recast their claims as proceedings *in rem* to avoid the Tax Injunction Act would be unavailing.

The second statute upon which plaintiffs rely for their claim of exclusive federal jurisdiction is 28 U.S.C. § 1355, which provides, in relevant part:

> The district courts shall have original jurisdiction, exclusive of the courts of the States, of any action or proceeding for the recovery or enforcement of any fine, penalty, or forfeiture, pecuniary or otherwise, incurred under any Act of Congress.

Plaintiffs assert that the damages which they seek under 46 U.S.C. § 596 constitute a penalty under 28 U.S.C. § 1355 which

divests the New Jersey courts of jurisdiction to entertain that portion of their claim. 46 U.S.C. § 596 provides, in relevant part:

Every master or owner who refuses or neglects to make payment in the manner hereinbefore mentioned without sufficient cause shall pay to the seaman a sum equal to two days' pay for each and every day during which payment is delayed beyond the respective periods, which sum shall be recoverable as wages in any claim made before the court. . . .

The state replies that the double-wage damages recoverable under 46 U.S.C. § 596 are not a "penalty" within the meaning of section 1355 and that section 1355 only applies to suits brought by the government.

 The authorities are divided on the question of whether section 1355 reaches private actions for damages. *Compare* 13 Wright & Miller, *Federal Practice and Procedure* § 3578, at 514 (1975) ("more usual modern view is that [§ 1355] extends only to suits by a public officer to recover a sum of money that will be paid into the public treasury") *with* 1 *Moore's Federal Practice* ¶ 0.62(14), at 700.45 (2d ed. 1982) ("[§ 1355] also confers jurisdiction of actions to recover penalties collectable by private parties under the laws of the United States"). However, the law in this circuit is governed by the decision in *Fields v. Washington,* 173 F.2d 701 (3d Cir. 1949). In *Fields,* the plaintiff tenant filed suit in federal court against his landlord under the Housing and Rent Control Act of 1947 for treble damages for alleged overcharges of rent. Because that Act had no provision expressly granting federal jurisdiction and the amount in controversy did not meet the minimum then required for jurisdiction under 28 U.S.C. § 1331, plaintiff asserted jurisdiction under the penalty provision of section 1355. This court, in an opinion by Judge Maris, affirmed the district court's dismissal for want of jurisdiction, stating:

[§ 1355] relates only to suits for a penalty. Here, however, the suit is not by a public officer to recover a sum of money which will be paid into the public treasury. If so it would doubtless be a suit

for a penalty and, therefore, cognizable under that section. . . . On the contrary, it is an action for damages brought to compensate the individual who has been injured. It is, therefore, not in any true sense of the term an action for a penalty.

*Id.* at 703. Under the construction given to "penalty" in *Fields,* private suits, such as that before us, to recover statutory damages, even if double or treble damages, are not actions to recover a penalty within the meaning of section 1355. *See also Hales v. Winn-Dixie Stores, Inc.,* 500 F.2d 836, 839–40 (4th Cir. 1974). *But see, e.g., Brown v. First National City Bank,* 503 F.2d 114 (2d Cir. 1974) (section 1355 invoked as basis for federal jurisdiction in suit brought by private plaintiff without discussion of the issue.) For this reason, we reject plaintiffs' contention that seamen's claims for double wages under 46 U.S.C. § 596 cannot be brought in the state courts because of the exclusive federal jurisdiction over "penalty" actions provided in section 1355.

Furthermore, in the leading case in which section 596 was considered in the context of the exclusive jurisdiction provision of section 1355, the court also decided against the applicability of section 1355, albeit on other reasoning. In *Cox v. Lykes Brothers,* 237 N.Y. 376, 143 N.E. 226 (1924), the New York Court of Appeals, in an opinion by then-Judge Cardozo, held that an action for double wages under section 596 was not an action for a "penalty" within the scope of the predecessor of section 1355 and could therefore be entertained by the state courts. The court stated:

The jurisdiction of the state courts is the first question to be determined. . . . The Appellate Division found the present suit to be one for a penalty or forfeiture within the meaning of [the predecessor of section 1355]. We do not so regard it. Congress has expressly said that the extra compensation, when due, "shall be recoverable as wages." This would seem decisive, without more, that in determining the bounds of jurisdiction it is not to be classified as a penalty. There was no thought that the state courts, which have undoubted jurisdiction to give judgment

for wages in the strict sense, should be shorn of jurisdiction to give judgment for the statutory incidents. This conclusion is fortified when we search for the purpose of the statute. The purpose, or at least the predominant one, was, not punishment of the master or owner, but compensation to the seaman.

*Id.* at 378–79, 143 N.E. at 227. *Accord Calvin v. Huntley,* 178 Mass. 29, 59 N.E. 435 (1901) (under predecessor to § 596).

■ It is true, as plaintiffs stress, that subsequent cases have referred to the damages recoverable under section 596 as penalties and have emphasized the punitive rather than the compensatory purpose of section 596. *See, e.g., Griffin v. Oceanic Contractors, Inc.,* —— U.S. ——, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982) (referring to section 596 damages as "penalty wages" and to section 596 as "the wage penalty statute"); *U.S. Bulk Carriers, Inc. v. Arguelles,* 400 U.S. 351, 354, 91 S.Ct. 409, 411, 27 L.Ed.2d 456 (1971); *Collie v. Fergusson,* 281 U.S. 52, 55–56, 50 S.Ct. 189, 191, 74 L.Ed. 696 (1930); *Swain v. Isthmian Lines, Inc.,* 360 F.2d 81 (3d Cir. 1966). *See also* 1 M. Norris, *The Law of Seamen* § 383, at 459–60 (3d ed. 1970) (essential purpose of section 596 is punitive). However, none of these cases involved the jurisdiction provision of section 1355. What is labeled a "penalty" for one purpose is not necessarily a "penalty" for purposes of section 1355. *See Hales v. Winn-Dixie Stores, Inc.,* 500 F.2d at 839 n. 3A. Moreover, even in *Griffin,* the Supreme Court has continued to emphasize that the primary purpose of the double wages provision of section 596 is compensatory, stating "the sure purpose of the statute is remedial." —— U.S. at ——, 102 S.Ct. at 3251. This is so notwithstanding the possibility or even the likelihood in this case of a great disparity between the amount withheld and the amount recoverable under section 596. *See also* 1 *Moore's Federal Practice* ¶ 0.62(14), at 700.44 n. 6 ("Penalty wages under 46 USC § 596 are not 'penalties' within [§ 1355]," *citing Cox* ).

■ We need not rest our decision on the construction of "penalty" adopted in *Cox* because we believe our decision in *Fields* limiting "penalty" in section 1355 to suits brought by a public officer on behalf of the public treasury is compelling. We therefore conclude that neither 28 U.S.C. § 1333 nor 28 U.S.C. § 1355 operates to confer exclusive jurisdiction on the federal courts in this case. They consequently present no bar to the availability of a "plain, speedy and efficient remedy" in the courts of New Jersey.

### E.

■ Even if a portion of plaintiffs' claims were to fall within exclusive federal jurisdiction, we reject plaintiffs' suggestion that the district court would therefore have had jurisdiction to decide all of their claims, or at least those portions within exclusive federal jurisdiction. All that is required to invoke the Tax Injunction Act is that the taxpayer have "available an adequate remedy" in state court. *See Grace Brethren,* 102 S.Ct. at 2510. The remedy provided by the state need not be coextensive with that available in the federal courts in order for it to be considered "plain, speedy and efficient." *See, e.g., Miller v. Bauer,* 517 F.2d 27, 32 (7th Cir. 1975) (state remedy need not be best remedy available or equal to that available in federal court). In *Rosewell,* although the taxpayer was required to pay her county property tax first and then seek a refund through state administrative and judicial procedures, the Court held that she had available a "plain, speedy and efficient" remedy in state court. 450 U.S. at 512, 101 S.Ct. at 1228. In *Grace Brethren,* although injunctive relief was unavailable in the California courts to restrain the collection of state taxes, the taxpayer could sue for a refund where it could make its constitutional challenge; the state remedy was therefore considered "plain, speedy and efficient." In *Grace Brethren,* it had been argued that the Tax Injunction Act was inapplicable because the Federal Government was an indispensable party to the action which could not be compelled to submit to state court jurisdiction, 102 S.Ct. at

2513 n. 38. The Court rejected that argument, stating that the Federal Government need not be a party for the litigation of the statutory and constitutional claims asserted.

 We believe these authorities suggest the answer to plaintiffs' contention that if section 596 could be enforced exclusively in the federal courts, they would not have a "plain, speedy and efficient" remedy in state court. If a plaintiff could circumvent the Tax Injunction Act by appending to a claim cognizable in state court one cognizable only in federal court, the underlying policy of the Tax Injunction Act would be defeated. In this case, plaintiff seamen asserted distinct claims, including a distinct claim seeking declaratory and injunctive relief, alleging the invalidity of the New Jersey statute compelling withholding of the New Jersey state taxes from their wages. We consider that claim to be the principal contention underlying the plaintiffs' lawsuits and view their appendage of the claim asserted under 46 U.S.C. § 596 as going to the remedy to which they might have been entitled if their underlying claim were successful. The claim as to the invalidity of the New Jersey statute could readily have been determined without the addition of the claim under 46 U.S.C. § 596. We believe the strong policy reflected in the Tax Injunction Act would require that the section 596 claim, even if it were exclusive to the federal courts, could not be decided until there was final state court resolution of the tax issue.

We leave open the situation where the essence of the taxpayer's claim is one which can be filed only in federal court. This is not such a case. Where, as here, the withholding which plaintiffs allege violates 46 U.S.C. § 596 was done pursuant to a New Jersey tax statute, the decision on plaintiffs' monetary claims and the decision on the validity of that statute are intertwined.[5]

---

**5.** Although the district court rejected plaintiffs' monetary claims on grounds independent of its decision as to the validity of the state taxes, the suggestion of United States Lines and Sea-Land that we affirm that portion of the district court's judgment fails to recognize that the court lacked jurisdiction to consider the claims in the first place. Similarly, we find no merit to the plaintiffs' suggestion that the solicitude

### III.

For the foregoing reasons, we hold that the Tax Injunction Act and the related principle of comity precluded the district court from entertaining these actions. We will therefore vacate the judgment of the district court, and remand with instructions to dismiss the actions for lack of jurisdiction.

which Congress and the federal courts have historically shown towards merchant seamen renders application of the Tax Injunction Act less appropriate in this case. The special status enjoyed by merchant seamen as "wards of admiralty", *see, e.g., U.S. Bulk Carriers, Inc. v. Arquelles,* 400 U.S. 351, 355, 91 S.Ct. 409, 411, 27 L.Ed.2d 456 (1971), cannot be used to ignore express jurisdictional bars.